**HUNTER v. DOWD, Warden.**

**No. 10580.**

United States Court of Appeals
Seventh Circuit.

July 11, 1952.

Major, C. J., dissented.

Theodore R. Scott, Chicago, Ill., for appellant.

John Ready O'Connor, Deputy Atty. Gen., for appellee.

Before MAJOR, Chief Judge, and DUFFY and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Petitioner, confined in the Indiana State Prison, appeals in *forma pauperis* from an order of the District Court discharging a writ of *habeas corpus* previously issued and remanding petitioner to the custody of respondent. By order of this court Mr. Theodore R. Scott was appointed counsel for petitioner for the purposes of this appeal. He has ably and efficiently represented petitioner; the court expresses its gratitude to him for his painstaking efforts.

On December 20, 1937, petitioner was convicted, in the Criminal Court of Lake County, Indiana, of the crime of second degree murder, despite his assertion of self-defense, and sentenced to life in prison. Having exhausted his state remedies, he filed in the District Court his petition for a writ of *habeas corpus,* averring, *inter alia,* that his trial had been conducted and his conviction obtained in violation of the rights guaranteed him by the Due Process Clause of the Fourteenth Amendment, in that he had been denied the assistance of

counsel. Respondent, in his answer, denied all material averments of the petition. Two hearings were held, at which witnesses were heard orally and documentary evidence was submitted in behalf of both parties. The District Judge rendered an unpublished memorandum opinion, designated as his findings of fact and conclusions of law, in which he included the following:

"Several witnesses testified about their recollections of whether the petitioner was represented at his trial. * * * Their testimony was conflicting. It was also vague, understandably so, because of the long lapse of time since the trial.

"The Lake County Criminal Court docket shows that when the petitioner's case was called for trial on December 20, 1937, he waived jury trial and was tried by the court. The order entered by the trial court on that date recites that at the trial, the petitioner was represented by counsel and that the defendant as well as the state presented evidence.

"The petitioner has the burden of establishing his allegations by a preponderance of the evidence. To meet that burden the petitioner's proof must be of such a convincing nature as to require the court to find that the recital in the trial court's order that the petitioner was represented by counsel at the trial is not true. Such proof is lacking in this case. It is accordingly concluded that the petitioner's conviction was not violative of due process." We are asked to overrule these findings on the ground that the evidence, viewed as a whole, preponderates in favor of petitioner and fails to sustain the findings, indeed, that it shows conclusively that he was wholly without assistance of counsel at the time of his trial and conviction.

 Preliminary to consideration of the factual issue we observe that under the circumstances presented petitioner was constitutionally guaranteed the assistance of counsel. The evidence established beyond peradventure that he was uneducated and illiterate, ignorant of the intricacies of the law, and totally unaware of the fundamental elements of a fair trial guaranteed by the Constitution. In view of these facts and the gravity of the charge against him, there can be no doubt that the failure to provide him with counsel, if it occurred, constituted an unlawful abridgement of his constitutional rights vitiating his conviction and resultant sentence. See Smith v. O'Grady, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859; De Meerler v. Michigan, 329 U.S. 663, 67 S.Ct. 596, 91 L.Ed. 584; Uveges v. Pennsylvania, 335 U.S. 437, 69 S.Ct. 184, 93 L.Ed. 127.

We turn then to the substantial question presented, namely, in view of the evidence adduced at the two hearings, was the District Court justified in finding that petitioner's conviction was not violative of due process?

Both parties agree that if petitioner was represented by counsel, the service of an advocate was rendered by one Robinson, an attorney who was then practicing law in Gary, Indiana. Unfortunately this gentleman died prior to the institution of this proceeding. The same fate has befallen the court reporter. Furthermore, a transcript of the evidence was never transcribed from the original shorthand notes and the latter had been destroyed shortly after the death of the reporter. The trial judge was not called as a witness by either party. Thus, those documents and persons, which, in the usual course of events, would be most helpful in shedding light on the pertinent question were either not available or not utilized. In this setting it became necessary to consider other documentary evidence offered and the testimony of any person who could recall the events of the trial.

Of those documents introduced from the files of the state court which pertain to petitioner's trial, one of the most significant is a certified copy of the order of commitment, i. e. the judgment in the cause of the State of Indiana v. Leroy Hunter. The written judgment is enscribed on an ordinary printed form, with blanks available for the insertion of the variant factors such as the date, name of the defendant, attorneys, and judgment. The caption is: "State of Indiana vs.", followed by a blank in which is inserted in typing "Leroy Hunter." The printed form follows:

"Comes now the State of Indiana, by ...... Prosecuting Attorney; comes also the defendant in person and by counsel ...... and the court finds that the defendant ...... is ...... years of age, and that said defendant is guilty of the crime charged, namely: ......." The indicated blanks are typed in as follows: "Fred A. Egan"; "Leroy Hunter"; "Leroy Hunter"; "32"; "murder second degree". The language of the form, absent the filling words, impels us to the conclusion that the blank following the phrase "comes also the defendant in person and by counsel ......" was intended to contain the name of petitioner's attorney, namely, Robinson. Instead, petitioner's own name appears therein. In short, we have a court order which recites unequivocally that petitioner had no counsel other than himself. Nor can this conclusion be impeached by an argument that this blank was intended to bear the name of the defendant, for his name appears as defendant in the caption and again in the phrase following the one in question. The State of Indiana is named as party plaintiff and her prosecuting attorney is named with precision and with equal certainty the court finds that the name of petitioner's counsel is that of petitioner himself.

A second court record which lends credence to petitioner's contention that he had no counsel is the docket sheet in the case of "State of Indiana v. Leroy Hunter." Here are recorded all of the individual steps in the cause. The several entries from November 3, 1937 through January 4, 1946 recite the return of the indictment; arraignment; trial, conviction and sentence; a petition for writ of error; a motion to vacate judgment and a petition for writ of error *coram nobis*. None of these entries contain the name of counsel for petitioner or show that he had counsel. However, the later entries from January 8, 1946 through March 6, 1950 are significantly different. In them, it is recited that the petition for writ of error *coram nobis* was heard and denied; reheard and again denied; that on the several instances petitioner was represented by attorney Cleve Stenhouse or by H. L. Golden, his partner

or associate. Thus it is clear that the name of counsel was customarily recorded on the docket sheet. Absence of any indication of counsel in the earlier entries necessarily implies that petitioner was not in fact represented at his trial.

Two additional court records warrant attention. They consist of entries in the so-called order book. The first was made November 22, 1937, the date of petitioner's arraignment. It recites: "Comes now the State of Indiana by its Prosecuting Attorney and comes also the defendant in his own proper person and by counsel, in open court, and the defendant * * * says that he is not guilty." The second entry bears the date of trial. It recites in identical language "Comes now the State of Indiana by its Prosecuting Attorney and comes also the defendant in his own proper person and by counsel * * *." Both entries imply that petitioner was represented by unnamed counsel. However, as will be subsequently shown, their accuracy was, we think, totally destroyed by oral testimony.

In his brief and argument before this court, respondent has taken the position that the order book containing the entries to the effect that petitioner was represented by unnamed counsel cannot be collaterally attacked. He asserts that, in the absence of a showing of fraud, court records speak "absolute verity," citing United States ex rel. Feeley v. Ragen, 7 Cir., 166 F.2d 976. Assuming, *arguendo*, that the proposition is sound, why does it not apply with equal vigor to the order of commitment which clearly shows that petitioner acted as his own counsel? So too with respect to the docket entries which, by their silence, show absence of counsel on behalf of petitioner. Which of these court records speaks with "absolute verity"? The solution to this problem must be found in the oral testimony.

Before undertaking a detailed analysis of the testimony of each witness one element of solidarity should be observed. Each witness called, whether by petitioner or respondent, agreed that the recital in the order book bearing the date of arraignment, November 22, 1937, to the effect that petitioner was represented by counsel, was

*false*. With striking unanimity each witness stated that petitioner appeared alone on that date. In spite of this, and the other contradicting documentary proof, respondent insists that the entry of December 20, 1937, couched in the same legal formalisms, must be believed, indeed, that it must be regarded as true with such dogmatism as to foreclose any suggestion of its possible falsity. With this we cannot agree.

Of the witnesses called by petitioner three merit special consideration. The first was petitioner himself. He testified that shortly after his arrest he had retained Robinson to represent him and paid him some $93; that two or three days prior to trial Robinson notified him that he (Robinson) was withdrawing from the case because further fees were not forthcoming; that he (petitioner) was tried by the court, without the assistance or offer of assistance of counsel. Of course, in view of petitioner's interest in the proceedings, his testimony is subject to careful scrutiny.

The second witness, Willard Thomas, an acquaintance of petitioner and a witness for the State at the trial, testified without equivocation that petitioner was not represented by counsel; that "he had had one, but he didn't have the money, so I don't think the lawyer * * * came"; that "nobody [was] talking on his behalf."

Petitioner's third witness was Wardell Fields, presently an investigator for the prosecutor's office in Crown Point, Indiana, and, at the time of petitioner's trial a police officer with the Gary Police Department. His career in the latter capacity had extended over a period in excess of twenty-five years. Fields investigated the incident out of which petitioner's original trial and conviction grew. He was the principal witness for the prosecution at that trial. In addition he was a neighbor of Attorney Robinson. He testified that Robinson "was employed for Leroy's counsel. I don't know who employed him. His name was called at the beginning of this trial. For some reason he did not appear." Petitioner "didn't even have a poor [man's] attorney.[1]

Leroy Hunter was sitting there alone." "I know Robinson was not present at the trial." " * * * I thought it was, you know, unusual that the thing did happen like that, but * * * I didn't pay much attention to it, because this man had murdered a man; I thought he was going to the penitentiary anyway, whether he had a lawyer, or did not have one."

Two witnesses were called to testify on behalf of respondent. The first, Ben Schwartz, was, at the time of petitioner's trial, the deputy prosecutor who conducted the trial for the prosecution. He testified quite frankly that he had no recollection of the circumstances surrounding the trial, but he was certain his office would never prosecute a man unless he was represented by counsel.

The second witness, Eli Keserich, presently and at the time of the trial, bailiff and probation clerk of the Criminal Court, testified that petitioner had been previously convicted of a crime and placed on probation under the supervision of the witness; that he had attended petitioner's trial and had been interested in the outcome because of his position as probation clerk and that, after petitioner had been convicted, he, the witness, had moved for revocation of probation. He testified further that petitioner had been represented at the trial by Attorney Robinson. At the close of his testimony the witness was asked the following question by the court:

"Would you say, without any records, you remember Robinson on that day representing Hunter?"
To this Keserich replied:

"Yes, because Robinson was in court after that on a writ of error *coram nobis* with Mr. Golden and Mr. Stenhouse."

Thus, while the witness had mentioned his reason for recalling the events of the trial, i. e. his interest in its outcome, when faced with the crucial question of petitioner's representation he relied wholly upon an event occurring long after the trial as the basis for his recollection. This is ex-

---

1. The witness was presumably referring to court appointed counsel provided for in Section 2–211 of Burns' Indiana Statutes 1933.

tremely significant in view of the testimony of a rebuttal witness called by petitioner, Mr. Herman Golden. It was Golden with whom Robinson was supposed to have appeared in the *coram nobis* proceeding. Golden testified: (1) that he had never appeared in any proceeding of any nature with Robinson; (2) that he did not know Robinson. The effect of Golden's testimony is apparent. It completely destroyed the probity of Keserich's recollection.

We have set out in some detail the evidence submitted to the District Court upon which the finding and conclusion that "petitioner's conviction was not violative of due process" was based. This court is asked to set aside this finding. Of course, the scope of review of an appellate court with respect to questions of fact is limited. Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. admonishes that findings of fact are not to be set aside unless "clearly erroneous." Our function is, then, limited to a determination of whether the finding was clearly erroneous.

As recently as April 28, 1952 the Supreme Court has had occasion to define the term "clearly erroneous" as used in Rule 52(a). On that date, in United States v. Oregon Medical Society, 343 U.S. 326, 339, 72 S.Ct. 690, 698, the Court said: " 'A finding is "clearly erroneous" when *although there is evidence to support it,* the reviewing court *on the entire evidence* is left with a definite and firm conviction that a mistake has been committed.' " (Emphasis supplied.) See also United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746.

Having carefully considered the entire record in this cause, we are convinced that such a mistake has been committed. The only evidence, if, indeed, it can be properly called evidence, pointing to a finding that petitioner was represented by counsel, is entirely conjectural. Of the two entries in the order book reciting presence of counsel one is admittedly false. Its shadow is cast heavily on the second entry. The two witnesses who testified for respondent in no way showed that petitioner had had counsel. One confessed his lack of knowledge; the second was shown to have relied upon a conjectural basis of recollection, which was proved erroneous.

On the other hand petitioner's evidence unequivocally pointed to a failure on the part of the Criminal Court of Lake County to safeguard adequately petitioner's constitutional rights. The commitment order recites that petitioner was his own counsel. The docket entries are silent as to counsel until long after the trial and conviction. Petitioner, Willard Thomas, and, finally, Wardell Fields, the wholly disinterested witness, testified unqualifiedly that petitioner was without the benefit of counsel at trial.

The District Court apparently arrived at its conclusion because it felt bound by the entry in the order book on the date of trial. In the light of the other evidence that entry is no safe foundation for the conclusion reached.

The order discharging the writ is reversed, with instructions that respondent be ordered to release petitioner.

MAJOR, Chief Judge (dissenting).

The order appealed from, in my judgment, should be affirmed. True, as disclosed by the opinion, there were discrepancies in the records and conflict in the oral testimony of witnesses relating to the vital issue as to whether petitioner had the assistance of counsel at the trial which resulted in his conviction. The resolution of such discrepancies and conflict was, under our system, a matter for the district judge and not this court. He was in a better position to weigh and evaluate the testimony and to make an ascertainment of the factual situation.

I need not discuss the conflicting proof because the majority opinion discloses that this court has weighed and evaluated the testimony of the witnesses in reaching a result different from that of the district court. In my judgment, it cannot be plausibly asserted that the finding of the district court was "clearly erroneous" so as to make it an exception to Rule 52(a) of the Federal Rules of Civil Procedure. If this court is to weigh the conflicting testi-

mony in this case and resolve a factual issue contrary to the finding of the district court, I see no reason why it could not do so in every case where the proof is in conflict. Such a practice would result not only in confusion but would enlarge the proper function of a reviewing court.