## ALLEN *v.* GEORGIA.

**ERROR TO THE SUPREME COURT OF THE STATE OF GEORGIA.**

No. 641. Submitted January 19, 1897. — Decided March 15, 1897.

After a person had been convicted in a state court of murder, he sued out a writ of error from the Supreme Court of the State. On the day assigned for its hearing it appeared from affidavits that the accused had escaped from jail, and was at that time a fugitive from justice. The court thereupon ordered the writ of error dismissed, unless he should within sixty days surrender himself or be recaptured, and when that time passed without either happening, the writ was dismissed. He was afterwards recaptured, and resentenced to death, whereupon he sued out this writ of error, assigning as error that the dismissal of his writ of error by the Supreme Court was a denial of due process of law. *Held*, that the dismissal of the writ of error by the Supreme Court of the State was justified by the abandonment of his case by the plaintiff in the writ.

THIS was a writ of error to review an order of the Supreme Court of the State of Georgia dismissing a writ of error from that court which had been sued out to reverse the conviction of the plaintiff in error for the murder of one Charles Carr.

After defendant had been convicted and sentenced to death by the Superior Court of Bibb County, he made a motion for a new trial which was overruled, whereupon he sued out a writ of error from the Supreme Court of the State, which was assigned for hearing upon the 4th day of March, 1895. The case having been called upon that day, it was made to appear to the court by affidavits that Allen, after his conviction and

sentence, had escaped from jail, and was at that time a fugitive from justice. Upon this showing, the court ordered that the writ of error be dismissed, unless he should within sixty days surrender himself to custody, or should be recaptured within that time, so as to be subject to the jurisdiction of the court, and should furnish evidence thereof by filing the same in the clerk's office.

On May 6 — which was more than sixty days thereafter — the court made a further order, in which, after stating that the plaintiff in error had not surrendered himself to custody, and furnished evidence thereof as required, and that he had not been rearrested since his escape from jail, it was ordered that the writ of error be finally dismissed.

This judgment was, on July 13, 1895, made the judgment of the Superior Court of Bibb County. Afterwards Allen, having been recaptured, was, on the 25th of April, 1896, resentenced to death by the Superior Court, and thereupon made application to one of the justices of this court for a writ of error, which was duly granted — plaintiff assigning as error that the dismissing of his writ of error by the Supreme Court of the State of Georgia was a denial of due process of law.

*Mr. W. C. Glenn* and *Mr. Daniel W. Rountree* for plaintiff in error.

*Mr. J. M. Terrell* and *Mr. John R. Cooper* for defendant in error.

MR. JUSTICE BROWN delivered the opinion of the court.

The plaintiff in error claims that the order of the Supreme Court of the State of Georgia, dismissing his writ of error to the Superior Court of Bibb County, because he had escaped from jail and was a fugitive from justice, was a denial of due process of law within the meaning of the Federal Constitution.

It appeared from the record that, after the writ of error had been finally dismissed on May 6, 1895, Allen was subsequently recaptured and, upon April 25, 1896, was resentenced to death by the court in which he had been convicted. While the

precise question here involved has never before been presented to this court, we have repeatedly held that we would not hear and determine moot cases, or cases in which there was not at the time a *bona fide* controversy pending. In a similar case from the Supreme Court of Nebraska, *Bonahan* v. *Nebraska,* 125 U. S. 692, wherein it appeared that, pending the writ of error from this court, the plaintiff in error had escaped, and was no longer within the control of the court below, it was ordered that the submission of the cause be set aside, and unless the plaintiff were brought within the jurisdiction of the court below on or before the last day of the term, the cause should be thereafter left off the docket until directions to the contrary. A like order under similar circumstances was made in *Smith* v. *United States,* 94 U. S. 97.

In civil cases it has been the universal practice to dismiss the case whenever it became apparent that there was no real dispute remaining between the plaintiff and the defendant, or that the case had been settled or otherwise disposed of by agreement of the parties, and there was no actual controversy pending. *Lord* v. *Veazie,* 8 How. 251; *Gaines* v. *Hennen,* 24 How. 553, 628; *Cleveland* v. *Chamberlain,* 1 Black, 419; *Wood-Paper Co.* v. *Heft,* 8 Wall. 333; *Dakota County* v. *Glidden,* 113 U. S. 222; *Little* v. *Bowers,* 134 U. S. 547; *California* v. *San Pablo &c. Railroad,* 149 U. S. 308.

We know at present of no reason why the same course may not be taken in criminal cases if the laws of the State or the practice of its courts authorize it. To justify any interference upon our part, it is necessary to show that the course pursued has deprived, or will deprive, the plaintiff in error of his life, liberty or property without due process of law. Without attempting to define exactly in what due process of law consists, it is sufficient to say that, if the Supreme Court of a State has acted in consonance with the constitutional laws of a State and its own procedure, it could only be in very exceptional circumstances that this court would feel justified in saying that there had been a failure of due legal process. We might ourselves have pursued a different course in this case, but that is not the test. The plaintiff in error must have been

deprived of one of those fundamental rights, the observance of which is indispensable to the liberty of the citizen, to justify our interference.

We cannot say that the dismissal of a writ of error is not justified by the abandonment of his case by the plaintiff in the writ. By escaping from legal custody he has, by the laws of most, if not all, of the States, committed a distinct criminal offence; and it seems but a light punishment for such offence to hold that he has thereby abandoned his right to prosecute a writ of error, sued out to review his conviction. Otherwise he is put in a position of saying to the court: "Sustain my writ and I will surrender myself, and take my chances upon a second trial; deny me a new trial and I will leave the State, or forever remain in hiding." We consider this as practically a declaration of the terms upon which he is willing to surrender, and a contempt of its authority, to which no court is bound to submit. It is much more becoming to its dignity that the court should prescribe the conditions upon which an escaped convict should be permitted to appear and prosecute his writ, than that the latter should dictate the terms upon which he will consent to surrender himself to its custody.

The course pursued in this case is approved by the ruling of many courts in different States, and notably in the case of *Commonwealth* v. *Andrews*, 97 Mass. 543, where the defendant escaped during the pendency of his case in the Supreme Court. It was held that, not being present in person, he could not be heard by attorney; that if a new trial were ordered, he was not there to answer further, and that if the exceptions were overruled, a sentence could not be pronounced or executed upon him, p. 544. "So far as the defendant had any right to be heard under the constitution, he must be deemed to have waived it by escaping from custody, and the failing to appear and prosecute his exceptions in person, according to the order of court under which he was committed." In *Sherman* v. *Commonwealth*, 14 Gratt. 677, upon a similar state of facts, the court ordered that the writ of error be dismissed, unless the defendant should appear before a certain day. This judgment was afterwards approved in

*Leftwich* v. *Commonwealth*, 20 Gratt. 716. In the case of *Genet*, 59 N. Y. 80, the defendant escaped, pending the settlement of a bill of exceptions, and the court declining to proceed with the settlement of the proposed bill, the case was carried before the Court of Appeals, and the action of the Court of Oyer and Terminer affirmed. See also *People* v. *Redinger*, 55 California, 290; *Wilson* v. *Commonwealth*, 10 Bush, 526; *Gresham* v. *State*, 1 Texas App. 458; *McGowan* v. *People*, 104 Illinois, 100; *Warwick* v. *State*, 73 Alabama, 486; *State* v. *Conners*, 20 W. Va. 1; *State* v. *Wright*, 32 La. Ann. 1017; *Woodson* v. *State*, 19 Florida, 549; *Sargent* v. *State*, 96 Indiana, 63; *Moore* v. *State*, 44 Texas, 595; *State* v. *Craighead*, 44 La. Ann. 968; *Zardenta* v. *State*, 23 S. W. Rep. 684; *Gatliff* v. *State*, 28 S. W. Rep. 466.

The course pursued in this case has also received the approval of the Supreme Court of the State of Georgia in several prior cases. *Madden* v. *The State*, 70 Georgia, 383; *Osborn* v. *The State*, 70 Georgia, 731; *Gentry* v. *The State*, 91 Georgia, 669.

The constitution of the State of Georgia, Art. 6, Sec. 2, Par. 6, requires the Supreme Court to dispose of every case at the first term, unless prevented by providential causes; and, by section 4271 of the Code, this enactment is repeated, with a further provision that no continuance shall be allowed except for providential cause. Indeed, it is admitted that it would be useless to ask the Supreme Court of the State of Georgia to reinstate this case, or to grant to the plaintiff in error any relief whatever, because under the rules and decisions of that court, and under the statutes of the State of Georgia, as construed by that court, such relief would be denied. Whether the court should give the plaintiff sixty days, or until the last day of the term, to appear and surrender himself to custody, was a matter for the court to determine, and even if there were error in that particular, it would not constitute a denial of due process of law.

The order of the Supreme Court dismissing the writ of error must, therefore, be

*Affirmed.*