IRVIN v. STATE OF INDIANA.

[No. 29,407. Filed February 5, 1957. Rehearing denied February 28, 1957. Writ of Certiorari to United States Supreme Court denied May 1, 1957.]

*Theodore Lockyear, Jr.,* and *James D. Lopp,* both of Evansville, for appellant.

*Edwin K. Steers*, Attorney General, *Richard M. Givan* and *Owen S. Boling,* Deputy Attorneys General, for appellee.

ARTERBURN, J.—This is an appeal by Leslie Irvin, appellant herein, from a judgment convicting him of murder in the first degree. The prosecution is the result of a grand jury indictment returned in the Vanderburgh Circuit Court on the 21st day of April, 1955. After a change of venue to the Gibson Circuit Court, trial was commenced on the 10th day of December, 1955, and on the 20th day of December, 1955, the jury returned its verdict against the appellant, finding him guilty. On the 9th day of January, 1956 judgment was entered on the verdict and appellant was sentenced to pay the death penalty. The assigned error here is based solely upon the overruling of appellant's motion for a new trial.

, The record in this case shows that on the night of January 18, 1956 the appellant escaped from the Gibson County jail, and that on the next day the attorneys for the appellant filed in open court a motion for a new trial. The material part of the court's entry is as follows:

"And now said attorneys file in open court the motion for a new trial. And now there is further showing to the court by Earl Hollen, the Sheriff of Gibson County, Indiana, that the defendant, Leslie Irvin, escaped from the Gibson County jail last night and that his whereabouts are unknown."

The record further discloses that the appellant was still at large on January 23, 1956 when the court made the following record:

". . .

"And now the court having had under advisement the motion for a new trial and being sufficiently advised in the premises, now overrules

the defendant's motion for a new trial, to which ruling of the court the defendant's attorneys except. And the court being advised by the Sheriff of Gibson County, Indiana, that the defendant, Leslie Irvin, escaped from the Gibson County Jail on the night of January 18, 1956 and is still at large, a fugitive from justice and his whereabouts are unknown.

"And now the attorneys for the defendant file with the court a copy of a letter received from the defendant, which letter is in the words and figures following, to-wit:

"Wednesday
"January 18, 1956

"Dear Ted:

"I know this is the wrong thing to do, but I can't just go up to Michigan City and wait. If, they ever do give me a new trial, I'll come back and face it. Maybe the jury then will believe the truth.

"I appreciate it if you go on with the appeal. That was why I asked you the last time I saw you, if I had to be here when you filed for a new trial.

"I know that you and Jim are doing everything you can for me. It's a hard fight. But all three of us knows that the police lied, and I was convicted before I was even tried. I haven't given up hope, but it sure is hard.

"As I said above, if and when I get a new trial, I'll try again. Thanks for everything you have done for me.

Yours very truly,

LES"

"It is, therefore, ordered, adjudged and decreed by the court that the motion for new trial is overruled, to which ruling the defendant's attorneys except."

The state contends that the appellant having escaped, and placed himself beyond the jurisdiction and control of the court, forfeited his right to ask the court for a new trial, since he thereby was asking for certain

benefits and rights under the law, and at the same time, was placing himself beyond the jurisdiction of the court, and flouting its authority as a fugitive from justice. The question arises as to whether or not the attorneys' authority to represent a client, who has abandoned them and the court in which they represent him, is automatically terminated. May such a defendant ask for relief in court by way of a motion for a new trial, and still refuse to respond to any adverse order or rulings of the court?

In *People* v. *Redinger* (1880), 55 Cal. 290, 36 Am. Rep. 32, the defendant was convicted of murder, and sentenced to death by hanging and then escaped. The attorney general objected to any one being heard for the defendant on appeal, on the ground that the court ought not to recognize anyone as counsel for the defendant after he had escaped, and thereby voluntarily withdrawn himself from the jurisdiction of the court; however, a brief was allowed to be filed on behalf of the defendant-appellant. The court reviewed many cases, and stated that the whole theory of criminal proceedings is based on the idea of the defendant-appellant being in the power and under the control of the court at all time. The constitution and statute provides him with counsel and gives him certain rights and privileges. He cannot accept these benefits, and flout the law and jurisdiction of the court. The court finally stated on page 298:

"For the reasons here given, sustained by cases cited, we think the defendant has no longer a right to appear by counsel, when he has escaped from custody, until he has returned into custody. By breaking jail and escaping, he had waived the right to have counsel appear for him. (Com. v. Andrews, 97 Mass. ut. supra). In fact, his right to constitute counsel and invest him with authority no longer exists *while his absence from custody* continues." (Our italics).

In *People of the State of N. Y.* v. *Genet* (1874), 59 N. Y. 80, 17 Am. Rep. 315, the court held the defendant, who has escaped, will not be permitted to take any action, or to be heard in a criminal proceeding so long as he remains at large. This ruling was not based on any statutory provision but was held to be a general rule of criminal jurisprudence.

Some courts have held that a defendant may not ask a favorable ruling from a court, and place the court in a position by his escape so that he cannot be made to respond to an adverse ruling. *Tyler* v. *State* (1909), 3 Okla. Crim. Rep. 179, 104 Pac. 919, 26 L. R. A. (N. S.) 921; *Jackson* v. *Commonwealth* (1952), 247 S. W. 2d 52; *Pike* v. *Pike* (1946), 24 Wash. 2d 735, 167 P. 2d 401, 163 A. L. R. 1314.

Such courts have given as a reason for the refusal to consider any appeal or petition of a defendant while he is a fugitive from justice that it would be asking the court to do a futile or useless act which it cannot enforce.

In this case how could the trial court have granted the appellant a new trial if he were not present to participate in the new trial? He was asking the court through ostensible counsel to do a futile or useless act, depending upon his *whim or decision* as to whether or not he would finally or voluntarily surrender himself for a new trial. There was only one ruling the trial court could make in this case under the circumstances which were created by the appellant's own act of escape, and that was to deny or overrule the motion for a new trial.

The appellant in his letter to his attorney after his escape, which letter is set out above in the court's order book entry, says he would come back if he is granted a new trial. It is interesting to note the language which the Supreme Court of the United States

used in *Allen* v. *Georgia* (1897), 166 U. S. 138, 141, 41 L. Ed. 949, 17 S. Ct. 525 where it held a defendant who has escaped, commited a distinct criminal offense as well as abandoned his right of appeal. The court said:

". . . Otherwise he is put in a position of saying to the court: 'Sustain my writ and I will surrender myself, and take my chances upon a second trial; deny me a new trial and I will leave the state, or forever remain in hiding. . . .'"

Courts do not grant new trials on the basis of bargaining with a defendant at large. It is an affront to the court, and contemptuous to express such ■ assumption. If the court had granted his request for a new trial, and he had thereupon voluntarily surrendered, the appearances of a bargain would have been substantiated. *Smith* v. *United States* (1876), 94 U. S. 97, 24 L. Ed. 32.

Courts should not so coddle those who are defiant of its authority and the law, and who yet ask for its relief, that it is blinded to such inconsistencies. "If the law supposes that", Dickens has Mr. Bumble say, "the law is a ass, a idiot."

The failure of the prosecuting attorney to object to the filing of the motion for a new trial while the appellant was a fugitive cannot supply the authority ■ his counsel needed to represent him at the time he abandoned them, and the jurisdiction of the court. Furthermore, this is a matter which vitally affects the court's authority and judicial processes—a matter of public, not private concern. It was contempt of the court as well as a law violation. Such matters are not subject to waiver by either party to the action. It is a matter that lies with the courts in enforcing their authority.

Some courts hold that if an escaped defendant returns, or is recaptured, it is discretionary with the

court as to whether or not his appeal will be considered. *Stevens* v. *State* (1927), 26 Ohio App. 53, 159 N. E. 834; 2 Am. Jur., Appeal and Error, §235, p. 988.

We held in *Kirkman* v. *State* (1953), 232 Ind. 563, 114 N. E. 2d 878, that a defendant who escapes pending an appeal, forfeits his right to prosecute such appeal while out of the custody of the court, even though before the appeal was determined he was recaptured, and held in another state on another criminal charge arising subsequent to the escape.

Most of the cases on the question which we have examined, base their decisions on waiver or estoppel. They deal with situations where the appellant and defendant were still at large pending an appeal which apparently had been perfected, and errors properly asigned while he was still in custody. But be this as it may, the principle is the same whether the cause is pending on appeal or in the trial court during the absence of the defendant as a fugitive from its custody. If a prisoner escapes he is not entitled during the period he is a fugitive to any standing in court or to file any plea or ask any consideration from such court.

For authorities on the principle involved in the question here, see: *Doren* v. *State* (1914), 181 Ind. 314, 104 N. E. 500; *Southerland* v. *State* (1911), 176 Ind. 493, 96 N. E. 583; *Sargent* v. *State* (1884), 96 Ind. 63; *Warwick* v. *State* (1883), 73 Ala. 486, 49 Am. Rep. 59; *State* v. *Dalton* (1923), 185 N. C. 606, 115 S. E. 881; *State* v. *Broom* (1927), 121 Ore. 202, 253 Pac. 1042; *Lofton* v. *State* (1928), 149 Miss. 514, 115 So. 592, (Cert. Den. 278 U. S. 568, 73 L. Ed. 510, 49 S. Ct. 83); *Crawford* v. *State of Del.* (1953), 47 Del. 552, 94 A. 2d 603; *Knight* v. *State* (1950), 190 Tenn. 326, 229 S. W. 2d 501; *State* v. *Spry* (1944), 126 W. Va. 781, 30 S. E. 2d 88; *Snyder* v. *State* (1949), 90 Okla. Cr. 116,

210 P. 2d 787; 24 C. J. S., Criminal Law, §1825, p. 650, note 88; 2 Am. Jur., Appeal and Error, §235, p. 988.

Whether or not his attorneys would have had the right to file a motion for a new trial if the appellant had voluntarily returned before the period within which such a motion could have been filed had expired, we leave undecided. The same is true of the question that might arise had he been recaptured, and in the custody of the court before the expiration of such time. We do not have such questions before us here. There is no showing that the appellant voluntarily surrendered himself. Instead, counsel in argument admitted that he remained a fugitive from justice until he was recaptured in the state of California. This occurred some considerable time after the period within which the motion for a new trial could have been filed. The time ran out on appellant while he was voluntarily a fugitive from justice.

The action upon which the appellant predicates error in this appeal is based solely upon the overruling of a motion for a new trial. There is no other error claimed. Since appellant had no standing in court at the time he filed a motion for a new trial the situation is the same as if no motion for a new trial had been filed, or he had voluntarily permitted the time to expire for such filing. His letter reveals he was aware of this right, and had talked with his attorneys about a new trial and an appeal.

No error could have been committed in overruling the motion for a new trial under the circumstances.

Our decision on the point under examination makes it unnecessary for us to consider the other contentions of the appellant; however, because of the finality of the sentence in the case we have reviewed the evidence to satisfy ourselves that there is no

miscarriage of justice in this case. The record reveals, as well as the argument before this court, that appellant had unusually competent counsel furnished at public expense. He was loyally and expertly defended, at every point in the case. Four hundred and fifteen specifications of alleged error are presented in the motion for new trial.

The contention that the evidence was insufficient to support the verdict is not one of the items. A review of the evidence shows it to be both convincing and credible. Appellant was identified as the last person seen with the victim while alive. That occurred just a few minutes prior to the discovery of the killing. When the state rested appellant offered no evidence in defense. He made a confession. There is nothing to substantiate any claim it was forced or made under fear. Instead it seems appellant made it freely, motivated by a desire to avoid being tried in the state of Kentucky where he was wanted for other charges of multiple murder. It was the appellant who asked for an interview with the prosecuting attorney, Mr. Wever, who had not previously talked to him. Appellant asked if it would be enough if he confessed to the killing. Prosecutor Wever told him, no, that he would have to have other facts to corroborate his admissions.

Thereafter, in the company of the sheriff he pointed out the place where he threw the gun. A gun was discovered in a ditch at that point. During the time he was in jail, prior to the confessions he made, he was well-treated; permitted to sleep as desired, visited by friends and relatives, and a priest; told he could have an attorney, and was permitted to make telephone calls. He was permitted to order the kind of food he wanted, and on such occasions was served a menu better than that of the average prisoner, which included fried chicken, steak, and various kinds of special dishes.

It is true the law enforcement officers questioned him at intervals, but this never lasted over an hour or two at any one time, and it did not interfere with any of his natural wants, including sleep. We find nothing to support the claim that the confession was coerced.

Law enforcement officers should be commended, not condemned, for the attempts to identify and detect the persons who commit a crime, and this includes the arresting and questioning of suspects so long as the questioning is not done in an atmosphere of fear, threats, coercion and oppression. The obtaining of confessions from guilty persons is desirable, and is permissible in the public interest and welfare, so long as it is done under clearly proper circumstance, which appears to be the case here. A careful search of the record fails to show any contradiction of the confessions, and other evidence of his guilt.

It does not appear from the record and argument had, that the appellant was denied due process of law under the Fourteenth Amendment, or due course of law under the Bill of Rights, or that there was any miscarriage of justice when he was convicted and given the death penalty.

The judgment is affirmed.

Achor, C. J., Emmert, Bobbitt and Landis, JJ., concur.

NOTE.—Reported in 139 N. E. 2d 898.