**Leslie IRVIN, Petitioner-Appellant,**

v.

**Alfred F. DOWD, Warden, Respondent-Appellee.**

**No. 12080.**

United States Court of Appeals
Seventh Circuit.

Jan. 29, 1958.

Rehearing Denied Feb. 19, 1958.

SCHNACKENBERG, Circuit Judge.

From an order of the district court dismissing his petition for a writ of habeas corpus, petitioner has appealed to this court.[1]

The controlling facts are set forth in the opinion of the district court, 153 F. Supp. 531, and in the opinion of the Indiana Supreme Court in Irvin v. State, 236 Ind. 384, 139 N.E.2d 898.

Defendant was tried in the Circuit Court of Gibson County, Indiana, on an indictment charging him with murder. On December 20, 1955, a verdict finding him guilty of murder was returned by the jury and, on January 9, 1956, a judgment was entered on the verdict and he was sentenced to death. On January 18, 1956 defendant escaped from the county jail and his whereabouts was not known on January 19, 1956, at which time the trial court was informed by the sheriff of these circumstances. At the same time the defendant's attorneys filed a motion for a new trial, charging 415 errors committed by the trial court, including several attacking the impartiality of the jurors. The trial court's order of January 23, 1956 recites that defendant's attorneys filed with the court a copy of a letter received from defendant reading, in part, as follows:

"Wednesday
"January 18, 1956

"Dear Ted:

"I know this is the wrong thing to do, but I can't just go up to Michigan City and wait. If, they ever give me a new trial, I'll come back and face it. Maybe the jury then will believe the truth. * * *"

By said order the court overruled the motion for a new trial. Defendant then appealed to the Supreme Court of Indiana, which affirmed the judgment below. Irvin v. State, supra.[2]

---

Theodore Lockyear, Jr., James D. Lopp, Evansville, Ind., James D. Nafe, South Bend, Ind., for appellant.

Edwin K. Steers, Atty. Gen. of Indiana, Richard M. Givan, Deputy Atty. Gen., for appellee.

Before DUFFY, Chief Judge, and FINNEGAN and SCHNACKENBERG, Circuit Judges.

1. Petitioner is also referred to herein as "defendant."

2. The Supreme Court of the United States denied certiorari to the Supreme Court of Indiana "without prejudice to filing for federal habeas corpus after exhausting state remedies." 353 U.S. 948, 77 S.Ct. 827, 1 L.Ed.2d 857.

**550**

■ In this case there is no disagreement with the well-established principle that a person convicted of a criminal offense in a state court has no right to prosecute a petition for a writ of habeas corpus in a federal court, based upon an alleged violation of his federal constitutional rights, unless he has exhausted his available state remedies. Brown v. Allen, 344 U.S. 443, 487, 73 S.Ct. 397, 97 L.Ed. 469. This principle has found repeated recognition, including our decision in United States ex rel. Touhy v. Ragen, 224 F.2d 611, 614.

■ It must be borne in mind that, unless and until defendant shows that he has exhausted remedies afforded him by the state of Indiana, we are not permitted to consider whether his federal constitutional rights were violated at his trial.

■ However the parties hereto are not agreed on whether defendant did exhaust Indiana's remedy of appeal to the Supreme Court of Indiana, of which he chose to avail himself. The only assignment of error by defendant in the Supreme Court of Indiana was that the trial court erred in overruling his motion for a new trial.

The state supreme court thoroughly considered the law as announced in numerous court decisions, and held, 139 N.E.2d at page 901,

"* * * If a prisoner escapes he is not entitled during the period he is a fugitive to any standing in court or to file any plea or ask any consideration from such court."

That court pointed out:

"* * * There is no showing that the appellant voluntarily surrendered himself. Instead, counsel in argument admitted that he remained a fugitive from justice until he was recaptured in the state of California. This occurred some considerable time after the period within which the motion for a new trial could have been filed. The time ran out on appellant while he was voluntarily a fugitive from justice.

"The action upon which the appellant predicates error in this appeal is based *solely upon the overruling of a motion for a new trial.* There is no other error claimed. Since appellant had no standing in court at the time he filed a motion for a new trial the situation is the same as if no motion for a new trial had been filed, or he had voluntarily permitted the time to expire for such filing. His letter reveals he was aware of this right, and had talked with his attorneys about a new trial and an appeal.

"No error could have been committed in overruling the motion for a new trial under the circumstances." (Italics supplied for emphasis.)

We must accept as an authoritative statement of the law of Indiana what its supreme court said in the foregoing language. Therefore, briefly stated, the state law applicable to the facts in the record, is: Only by his motion for a new trial presented and argued to the court, while the court had custody of the defendant, could he have taken the first step in his resort to the remedy of appeal afforded him by the law of Indiana.

We think it is plain from a reading of defendant's letter, written after his escape, that he did not intend to again submit himself to the custody of the trial court if that court did not, in advance of such submission by him, grant him a new trial. It follows that if the court, after laborious consideration of the multitudinous grounds asserted by defendant, had denied his motion for a new trial, he would not have voluntarily returned and, if not recaptured, the trial court would have been powerless to enforce its judgment against him. Defendant did not exhaust the remedy afforded him by the law of Indiana. Instead he sought to substitute a remedy of his own creation, which in its operation would have permitted him, from a secret hiding place, by remote control, to coerce the trial court to do his bidding. Thereby he sought to transform the court of a

sovereign state into a mere puppet. Indiana had furnished him a remedy, simple and complete, originating in a motion for a new trial and leading by appeal to the highest court in the state. The trial court was in session in its accustomed place to hear such a motion; defendant was not there. There was nothing for the court to do but deny the motion, which it did.

As we have seen, on an appeal to the Supreme Court of Indiana, the action of the trial court was affirmed. We are in accord with the district court, because, in such a situation, a defendant in a criminal case is not entitled to relief in a federal court based upon the alleged violation of his rights derived from the constitution of the United States.

In Allen v. Georgia, 166 U.S. 138, 17 S.Ct. 525, 41 L.Ed. 949, Allen procured a writ of error from the United States Supreme Court, to review an order of the Supreme Court of Georgia, dismissing a writ of error from that court to a Superior Court in that state. The latter writ sought to reverse the conviction of Allen for murder. In the federal court Allen relied upon the due process of law provisions of the federal constitution. The facts showed that, after Allen had been convicted and sentenced to death by the Superior Court, he made a motion for a new trial, which was overruled. When his case in the state supreme court was called, it was made to appear by affidavits that, after his conviction and sentence, Allen escaped from jail and was at that time a fugitive from justice. Thereupon the court ordered the writ of error dismissed, unless he surrendered within 60 days or should be recaptured within that time, so as to be subject to the jurisdiction of the court. After the 60 days expired, it appearing that he had not surrendered himself or been rearrested, the Georgia Supreme Court dismissed the writ of error and its judgment was thereafter made the judgment of the Superior Court. Afterwards Allen, having been recaptured, was resentenced to death by the Superior Court, whereupon the writ of error issued from the United States

Supreme Court, which pointed out, 166 U.S. at page 140, 17 S.Ct. at page 526:

" * * * In a similar case from the Supreme Court of Nebraska, Bonahan v. Nebraska, 125 U.S. 692, 8 S.Ct. 1390, 31 L.Ed. 854, wherein it appeared that, pending the writ of error from this court, the plaintiff in error had escaped, and was no longer within the control of the court below, it was ordered that the submission of the cause be set aside, and, unless the plaintiff were brought within the jurisdiction of the court below on or before the last day of the term, the cause should be thereafter left off the docket, until directions to the contrary. A like order, under similar circumstances, was made in Smith v. United States, 94 U.S. 97, 24 L.Ed. 32."

The court also said, 166 U.S. at page 141, 17 S.Ct. at page 526:

"We cannot say that the dismissal of a writ of error is not justified by the abandonment of his case by the plaintiff in the writ. By escaping from legal custody * * * he is put in a position of saying to the court: 'Sustain my writ and I will surrender myself, and take my chances upon a second trial; deny me a new trial, and I will leave the state, or forever remain in hiding.' We consider this as practically a declaration of the terms upon which he is willing to surrender, and a contempt of its authority, to which no court is bound to submit. It is much more becoming to its dignity that the court should prescribe the conditions upon which an escaped convict should be permitted to appear and prosecute his writ, than that the latter should dictate the terms upon which he will consent to surrender himself to its custody."

The court in the Allen case cited Commonwealth v. Andrews, 97 Mass. 543, saying that it was there held that where the defendant escaped during the pendency of his case in the state supreme court, he could not be heard by attorney, the defendant not being present in person;

and that if a new trial were ordered, he was not there to answer further, and that if the exceptions were overruled, a sentence could not be pronounced or executed upon him. The United States Supreme Court quoted with approval the following language from the Andrews case, at page 544:

"So far as the defendant had any right to be heard under the constitution, he must be deemed to have waived it by escaping from custody and failing to appear and prosecute his exceptions in person, according to the order of court under which he was committed."

The court also cited with approval Sargent v. State, 96 Ind. 63. In that case Sargent was convicted of a felony under Indiana law and took an appeal to the state supreme court. However before his appeal was filed in that court, he escaped from custody. When this matter was made known to the supreme court the appeal was dismissed. The Indiana court pointed out that Sargent was not in the custody or under the control of the trial court or its officers at the time the bill of exceptions appearing in the record was signed and filed. At page 65, the court said:

"* * * It must be taken as true, therefore, that the defendant, Sargent, before and at the time this appeal was attempted to be taken, was and still is at large as an escaped convict, and that such attempted appeal, though nominally taken by him and in his name, was in fact taken by the attorney who appeared for and represented him during the progress of the cause in the court below."

The Indiana Supreme Court said, at page 66:

"* * * It may well be doubted, we think, whether this appeal was legally taken in the name of the defendant, Sargent, when it appears, as it does, that all the steps required by the statute, in taking an appeal in a criminal action, were taken in this case after his escape from the custody of the law. Section 1887, R.S.1881. But, waiving this point, we are convinced that it is no part of our duty, as an appellate court, to entertain the appeal of the defendant, Sargent, in this case, and review the decision and orders or rulings, of which he complains, while he is at large as an escaped convict. * * *"[3]

The Indiana court also said:

"It is the constitutional right of the accused, in all criminal prosecutions 'to be heard by himself and counsel;' but it must be held, we think, that he has no right to appear by counsel alone, after he has escaped from lawful custody and is at large. Such has been the uniform holding of the courts of last resort in other jurisdictions, and it meets our full approval. * * *"

The appeal was dismissed.

Smith v. United States, 94 U.S. 97, 24 L.Ed. 32, was also cited in the Allen case. In the Smith case, the court said:

"* * * In this case it is admitted that the plaintiff in error has escaped, and is not within the control of the court below, either actually, by being in custody, or constructively, by being out on bail. If we affirm the judgment, he is not likely to appear to submit to his sentence. If we reverse it and order a new trial, he will appear or not, as he may consider most for his interest. Under such circumstances, we are not inclined to hear and decide what may prove to be only a moot case."

In the case at bar the trial court was not required to consider defendant's motion for a new trial while he was a fugitive. It was not required to hear and decide what, from then existing facts, might prove to be only a moot case.

An escape of a prisoner from custody has the same effect upon proceedings in

---

3. The court then quoted with approval a part of the language of Chief Justice Waite in Smith v. United States, 94 U.S. 97, 24 L.Ed. 32, set forth by us, 251 F. 2d 552.

his case in the trial court as it does in a reviewing court upon appeal from a conviction. The Indiana Supreme Court in defendant's appeal recognized that fact when, in relying upon Allen v. Georgia, supra, and other cases, it said of defendant, 139 N.E.2d at page 900:

" * * * He was asking the court through ostensible counsel to do a futile or useless act, depending upon *his whim or decision* as to whether or not he would finally or voluntarily surrender himself for a new trial. There was only one ruling the trial court could make in this case under the circumstances which were created by the appellant's own act of escape, and that was to deny or overrule the motion for a new trial.

\*    \*    \*    \*    \*    \*

"Courts do not grant new trials on the basis of bargaining with a defendant at large. It is an affront to the court, and contemptuous to express such assumption. If the court had granted his request for a new trial, and he had thereupon voluntarily surrendered, the appearances of a bargain would have been substantiated. Smith v. United States, 1876, 94 U.S. 97, 24 L.Ed. 32."

This ruling did not violate any of defendant's rights under the due process clause of the federal constitution.

Defendant did not exhaust his remedies under the law of Indiana. By his escape he abandoned the remedy to which his attorneys resorted. In Brown v. Allen, supra, 344 U.S. at page 487, 73 S.Ct. at page 422, the court pointed out that "To show that the time has passed for appeal is not enough to empower the Federal District Court to issue the writ."

For the reasons hereinbefore set forth, the judgment of the district court is affirmed and the stay of execution heretofore entered herein is vacated.

Affirmed and stay of execution vacated.

FINNEGAN, Circuit Judge (concurring).

In my study of this case one point lost but lurking throughout the extensive record encompassing the Gibson Circuit Court proceedings, implemented by evidence taken in the United States District Court, emerges into sharp focus. Counsel for Irvin grounded their petition for a writ of habeas corpus, filed in the United States District Court on allegedly constitutional deprivations arising before Irvin's escape from jail. The adverse ruling on the motion for a new trial, by the Indiana judge, and Indiana Supreme Court's decision on that point are unchallenged. Irvin does not expressly say that overruling his motion for a new trial violated his rights under the Fourteenth Amendment. He had access to the Indiana Supreme Court on appeal from his conviction. Indeed the brief filed for him in our court informs us " * * * he was permitted to appeal without objection, counsel were appointed for * * * [him] for the purpose of appealing his conviction in the Gibson Circuit Court to the Indiana Supreme Court * * *."

We are reviewing a District Judge's findings of fact and conclusions of law underpinning a judgment approving the Indiana detention as being legal and denying a petition to stay execution. Irvin v. Dowd, D.C.Ind.1957, 153 F.Supp. 531. Rule 52, Federal Rules of Civil Procedure, 28 U.S.C., circumscribes our review of findings of fact in appeals where habeas corpus has been refused below. Hunter v. Dowd, 7 Cir., 1952, 198 F.2d 13. Judge Parkinson, then presiding as District Judge, held a hearing on Irvin's petition and received some testimony. Measured by Rule 52, his relevant findings of fact can be left undisturbed.

Requiring as it does exhaustion of remedies available in state courts, the statute (28 U.S.C. § 2254) precluded relief in the district court. Nothing in the record before us suggests any official interference or incapacity justifying Irvin's failure to use the Indiana remedy by appeal. Brown v. Allen, 1952, 344 U.S. 443, 485–486, 73 S.Ct. 397, 97 L.Ed.

**469.** Again I point out we are not called upon, nor can we now review, the Indiana Supreme Court's holding that no error was committed "in overruling the motion for a new trial under the circumstances." 139 N.E.2d 898, 902. Since the point is not raised on Irvin's behalf, he abandoned his motion for a new trial by departing from the Gibson Circuit Court's jurisdiction. Only an attack on the Indiana holding that its corrective judicial process was forfeited would put in issue such proposition.

By his flight after verdict, Irvin forfeited a timely appeal to the Indiana Supreme Court for the purposes of obtaining review of the adverse ruling on his motion for a new trial. But he was no longer at large when the State Supreme Court handed down its opinion reported as Irvin v. State of Indiana, 1957, 139 N.E.2d 898. That fact distinguishes the situation facing our court from Eisler v. United States, 1949, 338 U.S. 189, 69 S.Ct. 1453, 93 L.Ed. 1897, in so far as there could possibly be any question about reviewing a conviction while a defendant-appellant is a fugitive from the state reviewing tribunal's jurisdiction.

Though the Indiana Supreme Court viewed Irvin's case as if no motion for a new trial had been filed, and consequently found that the denial of it was procedurally sound, that tribunal pressed further, saying, inter alia: " * * * however, because of the finality of the sentence in the case we have reviewed the evidence to satisfy ourselves that *there is no miscarriage of justice in this case.*" Irvin v. State of Indiana, 1957, 139 N.E.2d 898, 902. (Italics added.) After relating and discussing various evidentiary elements disclosed by the record the Indiana court concluded (Id. at page 902): "It does not appear from the record and argument had, that the appellant was denied due process of law under the Fourteenth Amendment, or due course of law under the Bill of Rights, Const. art. 1, § 12, or that there was any miscarriage of justice when he (Irvin) was convicted and given the death penalty." (Id. at page 902.) Certainly those quoted passages manifest a cautionary mood and judicial reluctance to rely solely on a technicality, regardless of its validity. Of course I think whatever was said by the Indiana Court after passing their decision point on the motion, was *dicta.* Supporting that motion were some 415 alleged reasons and grounds, among which a fair proportion concerned aspects of the jury problem and they, I assume, were unreviewed for the reasons already stated.

DUFFY, Chief Judge (concurring).

Irvin was not accorded due process of law in the trial which resulted in his conviction and death sentence. In my judgment, he did not receive a fair trial because some of the jury had pre-conceived opinions as to defendant's guilt, and also because of the conduct of the prosecuting attorney. "A fair trial in a fair tribunal is a basic requirement of due process." In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942.

More than half of the jurors who sat in the case had pre-conceived ideas that defendant was guilty of the offense charged. Some testified on the *voir dire* that it would take evidence to change that opinion. Defendant exhausted his twenty peremptory challenges. His motion for a continuance had been denied.

I realize that a prolonged effort was made to obtain an impartial jury. 431 prospective jurors were questioned. 269 were successfully challenged for cause. Nevertheless, the jury, as finally constituted, in my opinion, was not impartial. Probably it was as impartial as could be found in Gibson County on that date, but that was not sufficient to insure due process.

Another reason for the failure of due process was that the prosecuting attorney also acted as a witness on the trial. Mr. Wever participated in examining prospective jurors, interposed objections to testimony, and otherwise participated in the trial. He then took the stand as a witness and testified concerning a confession made to him. Over objection, he made the closing argument to the jury

and commented on the evidence including his own testimony. Such conduct was in violation of Canon 19 of the Canons of Professional Ethics. Such conduct was offensive to the rights of a defendant to a fair and impartial trial.

In spite of my belief that there was failure to accord defendant due process in his trial, I am convinced for the reasons stated in Judge Schnackenberg's opinion, that defendant is in no position to maintain a writ of habeas corpus in a federal court. By his escape from custody after he had been convicted and sentenced, he elected to embark upon a course of conduct which, under Indiana law, was a waiver of his right to appeal to the Indiana Supreme Court. In deference to the authorities cited in Judge Schnackenberg's opinion, I must agree defendant did not exhaust his available state remedies, and the District Court correctly dismissed the petition for a writ of habeas corpus.