Israel RAMOS, Appellant,

v.

STATE of Indiana, Appellee.

No. 1282S477.

Supreme Court of Indiana.

Sept. 6, 1984.

Ricardo B. Casas, East Chicago, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Appellant Ramos was charged by grand jury indictment with the crime of rape, a class B felony. After a jury trial he was convicted and sentenced to prison for a period of fourteen years. He asks that his conviction be reversed because of the introduction of evidence against him at trial in his absence and because the evidence was insufficient to support the verdict.

Appellant contends that the evidence serving to prove that the intercourse was compelled by force or imminent threat of force was insufficient to support the jury verdict. In determining this question we do not weigh the evidence nor resolve questions of credibility but look to the evidence and reasonable inferences therefrom which support the verdict. *Smith v. State,* (1970) 254 Ind. 401, 260 N.E.2d 558. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which a reasonable trier of fact could infer that appellant was guilty beyond a reasonable doubt.

Taking the evidence most favorable to the determination reached by the jury it reveals that at the time of the alleged offense the prosecuting witness Mary Camargo was living in an apartment with her small child, Victor Quintanilla, Darlene

Castro and Alex Castile. She was acquainted with appellant through his association with Victor Quintanilla and Darlene Castro. He would sometimes drop by the apartment in the morning and ask to take Quintanilla to work, and at other times of the day to visit Darlene Castro. On one occasion prior to the alleged criminal attack he slept overnight in the apartment with Castro.

On July 24, 1979, Camargo was asleep alone in her bedroom between seven and eight in the morning. She heard someone knock at the window, and then the curtain and a mirror fell. She saw appellant standing outside. He said he would put the things back if she would let him in. She admitted him to the apartment through the door and he then replaced the curtain and mirror.

Upon completing this restoration appellant attempted to embrace Camargo, and she told him not to and moved away. According to her testimony he then said that he was not going to do anything, "but then got strong with me, and then I started fighting, and then I was pulling his hair and that, he told me I should never have done that." He also said that he was going to teach her a lesson. He then grabbed her arms and sat on top of her on the bed, and as she struggled and cried, he moved her dressing gown up, and forced her legs apart as she twisted to avoid him, and succeeded in inserting his penis into her vagina. He then withdrew, stationing himself so as to block her exit from the room, and in a short time repeated the process while she again tried to fight him off.

Following the second act of intercourse, appellant asked Camargo whether he could use her shower. She replied in the affirmative and when he was in the bathroom, she pulled on a pair of jeans and ran barefoot to a neighbor's house. She was observed upon arrival there to be nervous and hysterical. Her hair was messed and her face showed "dried tears." She immediately declared that "he" had made her do it. Ten minutes later she stated that appellant

had raped her. A little more than an hour had elapsed since appellant had entered the apartment. At noon she went to her mother's house and the police were called. Camargo further testified that appellant had had no weapon, did not threaten her with bodily harm, but that she was in fear of being harmed by him. This ends the recitation of evidence tending to support the verdict.

A few days after the date of the alleged offense appellant gave a statement to the police in which he described this same encounter with Camargo. It corresponds to her version in most respects; however, he contended that she had enthusiastically engaged in caressing him and invited him to have sexual intercourse with her. He also limited the engagement to one act of intercourse.

Appellant focuses on segments of the conduct of the prosecuting witness surrounding the alleged incident in furtherance of his appellate claim. He points out that Camargo permitted him to enter her apartment, sat on her bed while he repaired the damage to her window, did not put on a robe, did not scream for help, suffered no visible trauma, consented to his use of the bathroom, and waited about four hours after leaving the apartment before causing the police to be phoned. While it may seem improbable that under the circumstances shown Camargo would have permitted appellant to enter her apartment and conduct herself initially as she did, absent some amorous feelings, yet when one considers the communal and open lifestyle involved, his romantic relationship with the other woman in the apartment, and the fact that she had just been awakened, that seeming improbability diminishes considerably. As to the evidence that she consented to his use of the bathroom, it may be said that it is not inconsistent with her fear of him and desire to avoid angering him further and provoking a renewal of the attack. And it may be conceded that she had an ample opportunity to immediately call police, but did not do so. Yet it is understandable that in her state of shock, injury, and embarrassment, she would want to seek the solace and advice of her mother before taking that step. These matters and the others of like import identified by appellant were for the trier of fact to consider and we find the remaining body of proof outlined above as tending to support the verdict of guilt to have that quality warranting belief to a moral certainty beyond a reasonable doubt that the prosecuting witness was compelled by force to submit to sexual intercourse.

■ Appellant finally claims that the trial court erred in conducting the trial on this charge in his absence. When the court convened for trial, the court stated for the record that appellant was advised of the day his trial was to take place. Appellant did not appear. Defense counsel affirmed that appellant had personal knowledge of the trial date. The court proceeded. Appellant was convicted and two years later he appeared before the court for the sentencing hearing. At that time the reason for appellant's failure to show up was explored. He stated that the reason was that he knew he was not guilty and was afraid of what might happen. This is a closely analogous situation to the one considered in *Bullock v. State*, (1983) Ind., 451 N.E.2d 646. There we held that one who with knowledge of a scheduled trial date does not show up as a result of fear of going to trial has voluntarily waived the right to attend trial.

Appellant argues that this Court should not credit his admission at the sentencing hearing because the question by counsel to which it was a response included within it the false assumption that the record reflected that he had been present during the jury selection process. This falsity colors the entire colloquy and calls it into question. However, the question acting as a verbal tool nevertheless pried out an answer from appellant which carried independent indices of truth. It was based upon his actual recollection of an event at which time he was scared of going to trial and perhaps going to jail, and had a belief in his innocence of the rape of Camargo. Furthermore, the fact that a knowing choice

not to appear was made was further corroborated by appellant's later statement at the hearing that he had had an opportunity to appear at his trial and simply did not do so. We, therefore, hold that the record before us sufficiently supports the conclusion that appellant voluntarily and knowingly waived the right to attend his trial.

The conviction is affirmed.

GIVAN, C.J., and HUNTER and PIVARNIK, JJ., concur.

PRENTICE, J., concurs in result.