Charles JAMES, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 62A01–8811–CR–368.

Court of Appeals of Indiana,
First District.

Feb. 27, 1989.

Susan K. Carpenter, Public Defender, Jane Ruemmele, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Mary Dreyer, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Charles James appeals the denial of his petition for permission to file a belated motion to correct error.

We affirm.

In April, 1986, the State charged James with battery and criminal recklessness. James was tried by jury in October, 1986, but the jury was unable to return a verdict. The State then filed three additional charges and James was ordered to appear for an initial hearing on the new charges. When James failed to appear, a warrant was issued for his arrest. The record shows James was tried by a jury and convicted in absentia in February, 1987, of battery, disorderly conduct and two counts of resisting law enforcement. He was sentenced in March, 1987, again in absentia, and received consecutive sentences on all counts. James apparently was apprehended on April 24, 1987; he filed his pro se petition for post-conviction relief on July 6, 1987. The State Public Defender filed the petition for permission to file a belated motion to correct error, which is the basis of this appeal, on James's behalf on April 21, 1988. The trial court denied the petition, summarily, without a hearing.

■ James argues in this appeal that he has shown each of the prerequisites for filing a belated motion to correct error by a preponderance of the evidence, entitling him to a direct appeal.[1] On appeal from the denial of a petition for post-conviction relief, the petitioner stands in the shoes of one appealing from a negative judgment.

---

1. Ind. Rules of Procedure, Post Conviction Rule 2, § 1 provides:
 Any defendant convicted after a trial or plea of guilty may petition the court of conviction for permission to file a belated motion for new trial where:
 (a) no timely and adequate motion to correct error was filed for the defendant;
 (b) the failure to file a timely motion to correct error was not due to the fault of the defendant; and
 (c) the defendant has been diligent in requesting permission to file a belated motion to correct error under this rule....

We will reverse the trial court's ruling as being contrary to law only if, considering only the probative evidence and reasonable inferences supporting the judgment, without weighing evidence or assessing witness credibility, the evidence is without conflict and leads to a conclusion opposite that reached by the post-conviction trial court. *Clark v. State* (1987), Ind., 506 N.E.2d 819, 820.

It is undisputed James never filed a timely motion to correct error. Hence, the inquiry focuses on whether James sustained his burden of proving the failure to file a timely motion to correct error was not due to his own fault. James maintains he is without fault because the trial court improperly sentenced him in absentia or failed to advise him of his right to appeal after he was taken into custody, in violation of the Due Process and Equal Protection Clauses of the federal Constitution and Art. 1, § 1 and 12 of the Indiana Constitution.

While both the federal and state courts have on numerous occasions considered whether a defendant's absence may be deemed a waiver of the right to be present at trial, *see, e.g., Taylor v. U.S.* (1973), 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174; *Diaz v. U.S.* (1912), 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500; *Bullock v. State* (1983), Ind., 451 N.E.2d 646; *Ramos v. State* (1984), Ind., 467 N.E.2d 717, Indiana courts have only recently addressed the propriety of sentencing a defendant in absentia. In *Williams v. State* (1988), Ind., 526 N.E.2d 1179, the Indiana Supreme Court held it was proper for a trial court to proceed with sentencing in the absence of the defendant, following a trial in the defendant's absence, when the evidence showed the defendant had knowingly and voluntarily absented himself from the proceedings. *Accord, Crank v. State* (1987), Ind.App., 502 N.E.2d 1355.

■ We note at this juncture that James does not allege in his petition that he did not know when his trial was to commence or that his absence from the trial and sentencing was involuntary. Neither does he aver specific facts which would explain his absence or permit a factfinder to infer his absence might not have been knowing or voluntary. We note that this is an appeal from a post-conviction rule 2 proceeding at which the record of trial is deemed to have been before the post-conviction court. *Henry v. State* (1976), 170 Ind.App. 463, 353 N.E.2d 482, 484, n. 2. James has not included that portion of the record dealing with his absence from trial in the transcript and he does not argue the sufficiency of the evidence offered at trial on the voluntariness question in this appeal. Under these circumstances, where both the allegations of James's petition and a factual basis are lacking, we must affirm the post-conviction court's determination that no error occurred in sentencing James, as neither that court nor this one has been shown by a preponderance of the evidence that James's absence was anything but knowing and voluntary.

Regardless of whether James knowingly and voluntarily waived his right to be present at sentencing, James alleges in his petition that he did not knowingly and voluntarily waive his right to appeal. James points out that in *Williams, supra,* and other cases where the defendants had absented themselves from trial, the defendants were advised of the right to appeal and hence, were not prejudiced by the trial court's actions, either because sentencing was postponed until the defendant had been brought into custody as in *Bullock, supra* and *Ramos, supra,* or because the defendant was apprehended before the period for filing a motion to correct error had expired, immediately brought into court and advised of the right to appeal, as in *Williams, supra.* James distinguishes *Crank, supra,* which held that a defendant abandons his right to appeal by voluntarily absenting himself from sentencing, on the same basis, noting that Crank was not recaptured until after the filing period had expired.

■ Indiana, like other jurisdictions, has long followed the rule that a defendant forfeits his right to appellate review by voluntarily absenting himself from the trial court's jurisdiction during the period desig-

nated for filing a motion to correct error. *See, e.g., Skolnick v. State* (1981), 275 Ind. 461, 417 N.E.2d 1103; *Lewis v. State* (1978), 268 Ind. 398, 375 N.E.2d 1102; *and, cf., Molinaro v. New Jersey* (1970), 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 and *Eisler v. U.S.* (1949), 338 U.S. 189, 69 S.Ct. 1453, 93 L.Ed. 1897. Under Indiana law, a defendant is precluded from perfecting an appeal unless he submits to the trial court's jurisdiction. *See, Irvin v. State* (1957), 236 Ind. 384, 139 N.E.2d 898, *aff'd. sub. nom. Irvin v. Dowd* (7th Cir.1958), 251 F.2d 548, *rev'd. on other grounds*, 359 U.S. 394, 79 S.Ct. 825, 3 L.Ed.2d 900. Consequently, the appeal of a defendant initiated before an escape is effectuated is properly dismissed; *Prater v. State* (1984), Ind., 459 N.E.2d 39. Likewise, a defendant who is not returned to custody until the deadline for appeal has passed cannot appeal at all. *See, Evolga v. State* (1988), Ind., 519 N.E. 2d 532. This type of rule has repeatedly withstood constitutional challenge, even when a defendant has been a fugitive for only a brief period of time and his return to custody occurs before the appeal is dismissed. *See, e.g. Estelle v. Dorrough* (1975), 420 U.S. 534, 95 S.Ct. 1173, 43 L.Ed. 2d 377; *Allen v. Georgia* (1897), 166 U.S. 138, 17 S.Ct. 525, 41 L.Ed. 949.

James contends a different rule is constitutionally mandated for a defendant who returns to the trial court's jurisdiction before the time to appeal has expired. He relies upon *Prater v. State, supra,* and *Ruetz v. Lash* (7th Cir.1974), 500 F.2d 1225. *See, also, Crank v. State, supra,* (Sullivan, J. concurring). Prater was recaptured about two years after his appeal was dismissed. He argued error in the denial of his petition for belated appeal, claiming he did not knowingly and voluntarily waive his right to a direct appeal and was not at fault in the dismissal of his original motion to correct error. Prater cited as authority the seventh circuit's decision in *Ruetz, supra.*

The facts in *Ruetz* are similar to those involved in *Prater.* Ruetz walked away two days after his attorney was instructed to file a motion to correct error on Ruetz's behalf. The motion was timely filed but not ruled upon until Ruetz was returned to custody some three months later. The seventh circuit held that Ruetz was entitled to maintain his appeal, apparently because the rationale supporting dismissal, that the defendant was beyond the jurisdiction of the court, was not at work as in those cases where the constitutionality of the rule had been upheld, and because Ruetz had indicated before his escape that he intended to exercise his right to appeal. Applying the "deliberate by-pass" standard for determining the availability of habeas corpus review, the court concluded that Ruetz had not knowingly and voluntarily relinquished his right to appeal.

Consequently, even though the facts at issue in *Prater* were typical of those in which a forfeiture had been found, the Indiana Supreme Court found it necessary to reconcile the result reached in *Ruetz* with the earlier cases. The *Prater* court acknowledged that while an escape, of itself, may not constitute a knowing and voluntary waiver of the right to appeal, an escape was a volitional act on the part of a defendant which would preclude him from showing the absence of fault, one of the criteria for a belated appeal. The *Prater* court distinguished *Ruetz* in the same manner the seventh circuit distinguished *Ruetz* from the earlier cases: Ruetz was returned to custody before his appellate rights had "expired." *Prater*, 459 N.E.2d at 40.

Insofar as the *Ruetz* decision holds the dismissal of a timely appeal after a defendant has been returned to the jurisdiction is unconstitutional, its vitality is questionable. In *Estelle v. Dorrough, supra,* the U.S. Supreme Court upheld a forfeiture of state appellate rights which had been imposed without any showing of a conscious or deliberate waiver because of a failure to comply with the State's procedural requirements. The seventh circuit has since expressed its disapproval of *Ruetz*, acknowledging that the *Estelle* decision undermines the basic premise of *Ruetz* that a valid waiver is the only constitutional means of denying an appeal. *See, Lewis v. Duckworth* (7th Cir.1982), 680 F.2d 508, 509. Moreover, it is now clear the seventh circuit believes *Ruetz* to be inapplicable in

cases where a defendant is returned to custody before the period for appeal has expired since it found *Ruetz* to be factually distinguishable when confronted with those circumstances. *See, Lewis, id.* at 509.

■ Accordingly, we believe there is a constitutionally firm basis in Indiana law for concluding that a defendant who absents himself from his sentencing and refuses to submit to the trial court's jurisdiction while the time for filing an appeal is running, forfeits his opportunity to appeal. However, we need not generalize beyond the facts of this case. James did not meet the procedural requirements for maintaining an appeal. He has not demonstrated that the failure to comply with these procedural prerequisites was not a consequence of his own volitional acts. Hence, he does not meet the criteria for a belated appeal.

James argues that the manner in which this rule has been applied to him denies him equal protection of the law in violation of the federal Constitution and Art. 1, § 1 of the Indiana Constitution.[2] He maintains the trial court had the discretion to delay sentencing until he was apprehended and if the trial court had waited, he would have been advised of the opportunity to appeal, and the period for filing would have been tolled as it was for others such as Bullock and Ramos. *Infra.*, p. 1115.

■ It is now well settled that the federal Constitution does not guarantee an individual convicted in the state courts the right to state appellate review. *See, e.g., Griffin v. Illinois* (1956), 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891; *Rinaldi v. Yeager* (1965), 384 U.S. 305, 310, 86 S.Ct. 1497, 1500, 16 L.Ed.2d 577; *Estelle, supra* 420 U.S. at 536, 95 S.Ct. at 1175. Neither does the federal Constitution establish any right to collaterally attack a final judgment of conviction. *United States v. MacCollom* (1976), 426 U.S. 317, 323, 96 S.Ct. 2086, 2090, 48 L.Ed.2d 666. However, if a state creates a system of appellate review, the procedures used in deciding appeals must comport with the strictures of the Due Process and Equal Protection Clauses. *Evitts v. Lucey* (1985), 469 U.S. 387, 394, 402, 105 S.Ct. 830, 839, 83 L.Ed.2d 821.

■ While the Equal Protection Clause of the Fourteenth Amendment does not guarantee "absolute equality or precisely equal advantages," *Estelle, supra,* in the context of a criminal proceeding, it does require an adequate opportunity to present one's claims fairly, *MacCollom, supra* 426 U.S. at 323, 324, 96 S.Ct. at 2090, 2091, free of unreasoned distinctions. *Ross v. Moffitt* (1974), 417 U.S. 600, 612, 94 S.Ct. 2437, 2444, 41 L.Ed.2d 341. The Supreme Court, in dealing with equal protection challenges to state regulation of the opportunity to appeal, has therefore applied the traditional rational basis test. *Estelle,* 420 U.S. at 537, 95 S.Ct. at 1175 citing *Rinaldi, supra.*[3]

State rules of procedural default, like rules requiring the filing of notice to appeal or a motion to correct error within a prescribed time limit, vindicate the State's interest in orderly judicial procedure. *Estelle, supra* at 537, 95 S.Ct. at 1175. A state need not draw lines with "mathematical nicety" and apply the same rule to prisoners who escape while their appeals are pending and those who are apprehended before the time for filing has expired since a state might reasonably choose to deal more severely with those who simultaneously invoke the process of

---

**2.** James does not undertake a separate analysis of his equal protection claim which he premises upon the Indiana Constitution, and, he contends the right to a direct appeal in Indiana is statutory in nature. (Appellant's brief, p. 14). We therefore will decline to render an advisory opinion on either of these possible state constitutional arguments.

**3.** James asserts the right to appeal is a fundamental right, citing *Fay v. Noia* (1963), 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837. Suffice it to say, *Fay v. Noia* does not stand for this proposition. We also reject James's assertion that the right to appeal is a fundamental right as those rights have been defined for purposes of equal protection analysis merely because it is a right conferred by statute. Presumably, rights which are "fundamental" belong to a closed set of protections recognized as explicitly or implicitly guaranteed by the Constitution. *See, San Antonio Independent School Corp. v. Rodriguez* (1973), 411 U.S. 1, 32–34, 93 S.Ct. 1278, 1296–97, 36 L.Ed.2d 16.

the court and escape than with those who escape, return and invoke the appellate process. *Estelle, supra.* Such distinctions are sufficiently rational to withstand challenge based on the Equal Protection Clause. *Estelle, supra.*

We believe it equally rational for a trial court, in the exercise of its discretion, to proceed with sentencing in one case while postponing sentencing in another. The determination of whether a defendant has knowingly and voluntarily absented himself from trial is a fact sensitive inquiry which varies from case to case. A trial judge might feel the need to reevaluate that determination in a particular case, before proceeding with sentencing, as a means of ultimately ensuring an orderly and efficient use of the State's resources, but in another, feel confident that such a reconsideration is unwarranted. James absconded while on bond, before retrial; he absented himself with a full understanding of the weighty trial rights he would forfeit. The trial court could presume, when the evidence showed James had left the jurisdiction, that his absence was an informed choice. It would be disingenuous for James to argue that, had he been warned he would be abandoning his right to appeal, he would have remained for trial and sentencing, particularly in light of the fact he had a history of criminal convictions, and surely knew of his right to appeal.

The State of Indiana provides all criminal defendants the opportunity to appeal and imposes on all the same procedural prerequisites. Having chosen to forego that option, James stands in a position different from one who has not been given the same opportunity. The Equal Protection Clause does not compel Indiana to furnish James a delayed right to appeal with all of the attendant advantages if offered James in the first instance. *Cf., MacCollom, supra.*

██ James argues the court had a duty to inform him of his right to appeal. We agree. The trial court did have a duty, existing by force of court rule, Crim.Rule 11, to advise James at sentencing that he was entitled to take an appeal from the judgment. However, as the Supreme Court has held on at least two occasions, a defendant forfeits these ancillary benefits by absenting himself; the trial court owes him no duty to expressly warn of the protections he abandons or the content of rights afforded by court rule. *See, U.S. v. Gagnon* (1985), 470 U.S. 522, 529–530, 105 S.Ct. 1482, 1485–86, 84 L.Ed.2d 486; *Taylor v. U.S.,* (1973), 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174.

For the reasons stated above, we find no merit in James's contention that the failure to file a timely motion to correct error was not due to his own fault. We agree with the trial court that James has failed to demonstrate that he is entitled to file a belated motion to correct error.

██ Finally, James argues the trial court erred in denying his petition without a hearing. We note, however, that a hearing is discretionary with the court. P.C.R. 2. When a petitioner fails to demonstrate, either by his petition or the record, that he is entitled to file a belated motion to correct error, no evidentiary hearing need be held. *Zellers v. State* (1977), 266 Ind. 111, 361 N.E.2d 143, 144; *Williams v. State* (1976), 168 Ind.App. 107, 341 N.E.2d 524, 525, n. 3. *See also, Blackmon v. State* (1983), Ind. App., 450 N.E.2d 104. Inasmuch as James's petition for permission to file a belated motion to correct error does not show grounds for relief and there is no indication in the record that he was so entitled, the trial court did not err in summarily denying his petition.

JUDGMENT AFFIRMED.

RATLIFF, C.J., and NEAL, J., concur.