## Gentry *v.* The State.

When a criminal case involving a felony has been brought to this court, and the accused escapes from jail and becomes a fugitive from justice, and this court is informed of these facts by affidavits from the proper officers, the writ of error, although the case has been argued, if not decided, before the escape takes place, will be dismissed, after giving the accused a reasonable time to surrender himself to the proper custody so as to insure submission to the judgment of this court when rendered.

July 3, 1893.

J. M. McBride, J. A. Blance, R. T. Goodman, J. S. Edwards, Holderness & Watkins and Adamson & Jackson, for plaintiff in error.

W. A. Little, attorney-general, and A. Richardson, solicitor-general, *contra.*

Lumpkin, Justice.

Asbury Gentry was convicted of murder, and filed a motion for a new trial, to the overruling of which a bill of exceptions was sued out, and the case brought to this court. It was argued, and while this court had the same under consideration, the plaintiff in error escaped from jail and became a fugitive from justice. The fact of his escape was brought to the attention of this court by the solicitor-general, who filed affidavits of the proper officers showing that the escape had actually taken place, and that the prisoner was still at large and his whereabouts unknown. This court, in *Madden et al.* v. *State*, 70 *Ga.* 383, sanctioned this method of showing the escape and flight of a person convicted of crime,

occurring after the writ of error in his case had been transmitted to the Supreme Court. It is true that the fact of escape was admitted by counsel for the plaintiff in error in this case, but Chief Justice JACKSON distinctly stated that the necessary facts were brought to the knowledge of the court by the affidavit of the jailor, and this statement would not have been made if the court had not regarded the affidavit as a proper source of information. No reason occurs to us why it should not be. In the very nature of things, the reviewing court must necessarily, in some manner, be informed of all facts pertinent to the proper disposition of a case which do not appear of record, but which transpire after the writ of error has been sued out; such, for instance, as the death of a party, or the death or illness of an attorney, or other and equally important matters. Tendering to the court affidavits of persons who have actual knowledge of the facts sought to be established, if not the only practicable way of properly presenting such matters for consideration, is at least the method which has uniformly been pursued at this bar, has had the sanction of long usage, and consequently must be considered as the proper practice.

The solicitor-general moved to dismiss the writ of error, because of the escape and flight of the plaintiff in error. On the 28th of February, 1893, the following order was passed:

"It appearing to the court by proper evidence that since the argument of this case, and while the same is under consideration, the plaintiff in error has escaped from the jail in which he was confined, and is now at large, a fugitive from justice, so that any judgment this court might pronounce could not be executed, either by a resentence in the event of affirmance, or by a new trial in the case of reversal, it is therefore ordered that the writ of error be dismissed unless he shall, on or before the calling of the docket of the Tallapoosa circuit at the next term, surrender himself to the custody

of the proper officer, so as to be subject to the jurisdiction of this court, and furnish evidence thereof by filing the same in the clerk's office."

Afterwards, on the 3d day of July, 1893, the call of the docket of the Tallapoosa circuit having been finished, and it appearing that Gentry had not furnished and filed in the clerk's office any evidence of his surrender to the custody of the proper officer, an order was passed finally dismissing the writ of error, and the principle stated in the head-note was announced.

It seems to be conceded that if Gentry had escaped from jail before his case was heard and argued in this court, there would be no doubt of the propriety of dismissing it. This court has twice so ruled: *Madden et al. v. State, supra; Osborn v. State*, reported in the same volume, page 731. Counsel for Gentry insisted, however, that after the case had been argued here, a different rule should prevail; and that the case having been heard, the plaintiff in error was entitled, as matter of right, to a decision of his case by this court upon its merits. We have been unable to find any adjudicated case in which this precise question has been raised, but upon principle we are unable to perceive any reasonable ground upon which to base the distinction for which counsel contends. The very same reasons which make it proper to dismiss a case in the one instance, render it equally proper to do so in the other. This will fully and convincingly appear from the reasoning employed by learned judges who have carefully and earnestly discussed the question as to the right of one who has voluntarily placed himself beyond the reach of the law, and manifested a disposition not to submit to the decision of the court should it be against him, to invoke its aid in any manner. The whole matter has been so well considered, and fully and ably discussed, we shall not attempt to give additional reasons in support of the numerous rulings which have heretofore been pro-

nounced by courts of high and recognized standing. We take the liberty of making copious extracts from a few of the leading cases on the subject, and confidently rest the correctness of our ruling in the present case upon the principles announced in the cases cited.

In People *v.* Genet, 59 N. Y. 81, Johnson, J., says: " In criminal cases there is no equivalent to the technical appearance by attorney of the defendant in civil cases, except the being in actual or constructive custody. When a person charged with felony has escaped out of custody, no order or judgment, if any should be made, can be enforced against him ; and the courts will not give their time to proceedings which, for their effectiveness, must depend upon the consent of the person charged with crime. The fact that in this State the law allows proceedings for writs of error without requiring the actual presence of the criminal in court, does not at all conflict with the view that steps will not be allowed to be taken on his behalf when he is no longer in custody or on bail, but has fled from the custody of the law. His presence in court is necessary when he is to be tried, or when some sentence or judgment involving his corporal punishment is to be pronounced. His being in custody is necessary to any step for or against him, except such as may be taken to bring him again into custody. All the cases which consider the question seem to concur in the view that an escaped prisoner cannot take any action before the court."

Justice Cofer, in Wilson *v.* Com., 10 Bush, 526, assigns the following reasons why a dismissal of the case with which he was dealing was proper: " The court ought not to do a nugatory act; yet, if we proceed to try this appeal, the appellant cannot be compelled to submit to our decision, if it should be against him, and ought not, therefore, to be allowed to reap the benefit of a decision in his favor. He might thus be enabled to

defeat the ends of justice entirely, for he may be able to keep beyond the reach of the officers until, by the death or removal of witnesses or other causes, his conviction upon a second trial would be rendered improbable, if not impossible. As he has chosen to undertake to relieve himself by flight, in contempt of the authority of the court and of the law, he cannot also invoke the aid of this court."

In Gresham v. State, 1 Tex. App. 458, the court, in overruling a motion to reinstate a case it had dismissed because of the escape of the accused, said: " The appellant having voluntarily placed himself out of the reach of the law, and having manifested a disposition not to submit to its decision should it be against him, he is not entitled to be heard in this court, or in any manner to invoke its aid. When the appellant surrenders himself to legal custody, so that the decision of his case, if against him, can be enforced, then this court, if it thinks it committed error in dismissing his bill, can revise its action."

Thornton, J., in People v. Redinger, 55 Cal. 290, makes an exhaustive review of the decisions on the subject. After citing numerous authorities in support of the general principle, he adds: " It may be urged that, inasmuch as the defendant need not personally appear in the appellate court (§1255 Pen. Code, ut supra), he has a right to appear by counsel, whether he is in custody or not. For the reasons here given, sustained by the cases cited, we think the defendant has no longer a right to appear by counsel, when he has escaped from custody, until he has returned into custody. By breaking jail and escaping, he had waived the right to have counsel appear for him. . . . In fact, his right to constitute counsel and invest him with authority no longer exists while his absence from custody continues."

In Com. v. Andrews, 97 Mass. 543, Bigelow, C. J.,

said : " The defendant, by escaping from jail where he was held for the purpose of prosecuting these exceptions and abiding the judgment of the court thereon, has voluntarily withdrawn himself from the jurisdiction of the court. He is not present in person, nor can he be heard by attorney. A hearing would avail nothing. If a new trial should be ordered, he is not here to answer further; if the exceptions are overruled, a sentence cannot be pronounced and executed upon him. . . . So far as the defendant had any right to be heard under the constitution, he must be deemed to have waived it by escaping from custody and failing to appear and prosecute his exceptions in person, according to the order of court under which he was committed."

In Smith *v.* United States, 94 U. S. 97, Mr. Chief Justice Waite said : " It is clearly within our discretion to refuse to hear a criminal case in error, unless the convicted party, suing out the writ, is where he can be made to respond to any judgment we may render. In this case it is admitted that the plaintiff in error has escaped, and is not within the control of the court below, either actually, by being in custody, or constructively, by being out on bail. If we affirm the judgment, he is not likely to appear to submit to his sentence. If we reverse it and order a new trial, he will appear or not, as he may consider most for his interest. Under such circumstances, we are not inclined to hear and decide what may prove to be only a moot case."

In addition to the foregoing authorities, see Woodson *v.* State, 19 Fla. 549; Sargent *v.* State, 96 Ind. 63; Moore *v.* State, 44 Tex. 595; Sherman *v.* Com., 14 Gratt. 677. In Leftwich *v.* Com., 20 Gratt. 716, the decision reversing the judgment of the trial court had already been delivered before the fact of the prisoner's escape was brought to the knowledge of the reviewing court, and accordingly its judgment was allowed to stand.

The court remark, however, that had the escape of the prisoner been known to them before the case was decided and judgment rendered therein, they "would not have decided or heard the case while the plaintiff in error was going at large," but would have followed Sherman v. Commonwealth, just cited.

It was on the ground that the plaintiffs in error, by fleeing from the custody of the law, waived and forfeited all right to invoke the aid of this court, that the case of *Madden et al.* v. *State, supra,* was dismissed. Chief Justice JACKSON said, in announcing the decision of the court: "In our judgment, they have thus deprived themselves of all right further to prosecute their case here. Their act is an open defiance of the law, and thereby they have deprived themselves of all legal right further to prosecute this writ of error."

Although argument had been had in the present case before the escape of Gentry, the fact remains that any judgment thereafter rendered by this court might have been but a vain and nugatory act; and so long as this court had jurisdiction of the case, it was within its province to deny any assistance to one who spurned its aid and protection by fleeing beyond its jurisdiction, and seeking an asylum of his own making. So we think, as stated above, that the foundation principle of the cases cited is directly applicable.

In several of these cases the writ of error was summarily dismissed. In others, however, the plaintiff in error was afforded an opportunity to surrender himself to the proper custody and submit to the jurisdiction of the court. On the whole, we are satisfied, after reflection, that the latter method of procedure is the safer and better practice, and accordingly it has been followed in the present case. By observing this practice, a person convicted of crime is not absolutely cut off from all right to have the legality of his conviction tested by the re-

viewing court; but at the same time he is given to understand that the court will not undertake to decide his case, and leave him free to accept or reject, as he may please, the judgment it may render.

*Writ of error dismissed.*