## IN RE ESTATE OF ABRAHAM SLIMMER, DECEASED.
## ADOLPH LIPMAN v. CHARLES BECHHOEFER AND
## ANOTHER.[1]

November 29, 1918.

No. 20,917.

**Dismissal and nonsuit — fraud on court — injunction in foreign court.**
1. Abraham Slimmer died at Dubuque, Iowa. Substantially all of his property was located in St. Paul, Ramsey county, Minnesota. His will was probated in Ramsey county which the probate court found to be his domicile. Adolph Lipman, a nephew, appealed to the district court. The trial in the district court on such appeal is de novo, and the burden was upon the proponents again to establish the will. They noticed the taking of depositions of necessary witnesses at Dubuque. The day before the date set for their taking the treasurer of Iowa obtained an injunction in the Dubuque court restraining respondents' counsel and the notary public and the witnesses named in the notice from taking or giving testimony in any proceeding having for its purpose the probating of the will in Minnesota, or the administering of his estate there, or the determining of his domicile to be there. The Iowa counsel for Lipman, who was in charge of the appeal and the contest of the will, was an active participant in the proceeding and was one of the attorneys for the state. The court found that the proceeding was not in good faith, that the purpose of Lipman was to defeat the jurisdiction of the Minnesota courts by the suppression of necessary evidence, and that he acted in fraud of the court and of the proponents of the will. It is *held* that the evidence sustains such finding.

[1]Reported in 169 N. W. 536.

*Court — maintenance of jurisdiction by coercive measures.*

2. A court has inherent power to render its jurisdiction effective, and when a litigant disobeys a proper order or commits a fraud on the court or the opposing party, so as to render jurisdiction ineffective, he may be subjected to coercive measures.

*Dismissal and nonsuit — due process of law.*

3. The order dismissing Lipman's appeal made by the district court on motion of the proponents, unless within a stated time he procured the dismissal of the Iowa injunction so that the witnesses whose testimony was sought would be available, was appropriate relief; and such dismissal was not a denial of due process to the appellant.

Abraham Slimmer, Jr., and Charles Bechhoefer petitioned the probate court of Ramsey county for the allowance of the last will and testament of Abraham Slimmer, deceased. From an order admitting the will to probate, Adolph Lipman appealed to the district court for that county. Petitioners' motion to dismiss the appeal on the ground that appellant had not filed in the probate court any objections to the allowance of the will and to the appointment of the executors, was denied by Michael, J. Appellant's motion to submit two specific questions to a jury was denied by Dickson, J. Petitioners' motion to dismiss the appeals because they were not taken or prosecuted in good faith and because the appeals were for the benefit of B. I. Salinger and others whose names were not known to the petitioners, was heard on affidavits before Dickson, J., who made findings and ordered the appeals dismissed, unless the proceeding in the district court of Dubuque county, Iowa, was dismissed of record and all writs of injunction dismissed of record within 10 days after service of a copy of his order. From this order, Adolph Lipman appealed. Affirmed.

*L. H. Salinger* and *Eugene Bryan,* for appellant.

*O'Brien, Young, Stone & Horn* and *Leopold Hammel,* for respondents.

DIBELL, J.

The will of Abraham Slimmer was probated in Ramsey county, Minnesota. Charles Bechhoefer and Abraham Slimmer, the respondents here, both of St. Paul, in Ramsey County, were nominated executors by the will, and they proposed it for probate. Adolph Lipman, a nephew of

Slimmer, appealed to the district court. The district court conditionally dismissed the appeal, and he appeals to this court.

1. Abraham Slimmer died at Dubuque, Iowa, on August 15, 1917. His will and its two codicils recited that he was a resident of Ramsey county, Minnesota. The will and first codicil were executed at Dubuque. The last codicil was executed at St. Paul.

Slimmer left an estate of something over $500,000, all in personal property. Substantially all of it, consisting of an interest as partner in a partnership doing business at St. Paul, was physically located in Minnesota.

Slimmer left a number of collateral heirs but no direct ones. No nearer relationship than that of nephew and niece is shown. He bequeathed something like $29,000 to various of his relatives and friends. Not all of his relatives were remembered. He bequeathed something like $45,000 to various benevolent and educational institutions. The residue of his estate he bequeathed to the Jewish Hospital Association of Milwaukee, Wisconsin.

The will was admitted to probate in Ramsey county on October 8, 1917. All of the heirs and others interested had due notice. Lipman was in St. Paul at the time, and knew of the hearing, but took no part. The court found that Slimmer was a resident of Ramsey county and that he was of testamentary capacity and that the will was duly executed.

Lipman appealed to the district court on November 6, 1917. The substantial grounds of his appeal, as disclosed in his objections filed, were that the will was not properly executed, that Slimmer was not a resident of Ramsey county, and that he was not of testamentary capacity. Prior to the probate of the will there had been a conference of the heirs at Chicago. At this conference it was decided that a contest should be made, and that an appeal should be taken in Lipman's name; and it was understood that the Iowa counsel appearing on this appeal would have charge of the litigation and so he has had from the beginning and now has.

The appeal was noticed for trial on January 30, 1918. The trial in the district court on appeal from the probate court is a trial de novo. It became necessary for the executors to produce for the second time proofs

of the execution of the will and the testamentary capacity of Slimmer and his domicile. This necessitated the taking of testimony in Dubuque where the will and first codicil were executed.

The executors gave notice of the taking of depositions at Dubuque on January 8, 1918. On January 7, 1918, when one of the counsel for the executors was in Dubuque to participate in the taking of the depositions, the treasurer of Iowa procured the appointment of an administrator of Slimmer in the Dubuque court, and on the same day procured an ex parte injunction restraining counsel from taking testimony before any officer in Iowa for use in any proceeding in Minnesota having for its purpose the probating of Slimmer's will, or the administration of his estate, or the determination that he was a resident of Minnesota, restraining the notary from taking the testimony of any witnesses in such a proceeding, and restraining the witnesses named in the notice, among whom were the witnesses to the will and the first codicil, from appearing or giving testimony before the notary or any officer in the state of Iowa or any other place in any proceeding having for its purpose the probating or administering of the estate of Slimmer in Minnesota or determining his domicile or the validity of his will. Obedience to this injunction prevented the executors from proceeding with the proof of the will.

The grounds of the injunction, as appears from the petition for it, were that Slimmer was domiciled in Iowa; that the proceedings in the state of Minnesota were a fraud upon the state of Iowa; that if the state of Iowa did not appear the Minnesota courts would adjudge that he was domiciled in Minnesota; that Iowa should not be required to submit the question of domicile to the Minnesota courts, and that Iowa intended bringing an action in the Supreme Court of the United States for the purpose of having an adjudication that Slimmer was domiciled in Iowa. Back of all this was the claim that Slimmer's property was subject to an inheritance tax in Iowa and that Iowa was entitled to collect general taxes for years when Slimmer had omitted to pay.

Lipman's attorney took part in the proceedings in the Dubuque court and was active in them. He was one of the attorneys for the state. He had charge of the taking of the depositions in the Minnesota case and knew the names of the witnesses and the notary. He made use of this knowledge.

The court found that the proceeding in the Dubuque court was not in good faith; that it was instituted to prevent the respondents from procuring the testimony of necessary witnesses; that its purpose was to prevent the respondents from proving the execution of the will, the testamentary capacity of the decedent, and his place of residence; that it was an unlawful interference with the proceedings in the Minnesota court, and that it was a fraud upon the rights of the respondents and the beneficiaries under the will.

The court thereupon entered an order that the appeal of Lipman be dismissed unless the proceedings in Iowa be dismissed within 10 days after service of the order. From this order Lipman appeals.

In substance the court's findings are well sustained. That the purpose of counsel was to defeat the jurisdiction of the Minnesota courts is not to be denied. The probate decree was binding unless changed on appeal. He invoked the jurisdiction of the district court by his appeal and then sought to keep from the court the evidence essential to an adjudication. That Lipman is chargeable with what his counsel did is not open to serious question. He was in entire charge of the appeal for Lipman and for others interested in the contest of the will. So nearly as an attorney can be he was the alter ego of his client.

2. That a court has inherent power to maintain its jurisdiction and render it effective in behalf of litigants is not to be questioned. When a litigant disobeys a proper order, or commits a fraud on the court or the opposing party, the result of which is that the jurisdiction of the court is ineffectual, he may be subjected to proper coercive measures. What ought to be done depends upon the particular circumstances. A stay may be granted, or relief may be denied him, or a pleading may be stricken out, or a complaint may be dismissed. The general principle is illustrated in many cases though one similar in its facts to the case before us is not found nor it is supposed that there is one. Gross v. Clark, 87 N. Y. 272 (refusal to file bill of particulars; complaint stricken out); Haskell v. Sullivan, 31 Mo. 435 (refusal of defendant to appear as a witness when subpoenaed; answer stricken out and judgment against him); Campbell v. Justices, 187 Mass. 509, 73 N. E. 659, 69 L.R.A. 311, Ann. Cas. 462 (plaintiff, in contempt for violation of injunction, not entitled to proceed); Barney v. Barney, 6 D. C. 1 (refusal of defendant to bring

wards within jurisdiction of court; answer stricken); Casteel v. Casteel, 38 Ark. 477 (refusal of plaintiff to pay alimony; complaint dismissed and case heard on cross-bill); Hammond Packing Co. v. Arkansas, 212 U. S. 322, 29 Sup. Ct. 370, 53 L. ed. 530, 15 Ann. Cas. 645 (refusal of defendant to produce books; answer stricken out and judgment entered); Lovette v. Essig, 92 Mich. 461, 52 N. W. 750 (failure to file bill of particulars; striking out pleading); Peel v. Peel, 50 Iowa, 521 (refusal to pay alimony; striking out answer); Schroeder v. Chicago, R. I. & P. R. Co. 47 Iowa, 375 (refusal to submit to physical examination; striking from pleadings claim of permanent injury suggested as proper); Wilson v. Fowler, 44 Hun, 89 (failure of defendant to furnish bill of particulars; counterclaim stricken out); Wanek v. City of Winona, 78 Minn. 98, 80 N. W. 851, 46 L.R.A. 448, 79 Am. St. 354 (order for physical examination of plaintiff; dismissal for refusal); Johnson v. Robinson, 20 Minn. 153 (170) (failure to bring in parties; dismissal); State v. District Court of Ramsey County, 139 Minn. 464, 166 N. W. 1080 (payment of costs; stay).

If it was proper to give relief to respondents hardly any other than that granted would have been effective or complete. A stay would have meant nothing but indefinite delay terminable only at the election of the appellant. This would have been intolerable, contrary to the policy of the law in the administration of estates, and unjust to the beneficiaries. The executors might have asked relief in Iowa. The injunction was granted ex parte and probably much as a matter of course as are temporary restraining orders under our practice. We do not allow ourselves to believe that the Dubuque court would upon a hearing have continued its injunction preventing witnesses within its jurisdiction testifying in a proceeding pending in a sister state, the right to whose testimony is enforced in comity and often granted by statute. But we should not put litigants proceeding in a court having jurisdiction to the trouble and expense and delay attendant upon long litigation in another state and to the possible hazard of submitting themselves to its final jurisdiction. The relief given should be sustained unless there be a constitutional objection to it.

3. In enforcing the right of one litigant due process must not be denied his adversary. Whether the dismissal of the appeal was a denial

of due process is a question not suggested by appellant and we do not have his help upon it. It is a live question in the case and one not free of difficulty. Counsel for respondents have discussed it and have cited authorities.

At the outset it should be observed that there is no question but that the Ramsey probate court had jurisdiction. Slimmer was domiciled either in Ramsey county or in Iowa. He had property in Ramsey. The fact that he died leaving property in Ramsey, gave the probate court jurisdiction of his Minnesota assets, whether he was testate or intestate, and regardless of his domicile. G. S. 1913, § 7205; Gregory v. Lansing, 115 Minn. 73, 131 N. W. 1010; In re Southard's Will, 48 Minn. 37, 50 N. W. 932; Fridley v. Farmers & Mechanics Sav. Bank, 136 Minn. 333, 162 N. W. 454, L.R.A. 1917E, 544; State v. Probate Court of Aitkin County, 130 Minn. 269, 153 N. W. 520. Slimmer left property in Iowa. The proper Iowa court had, so far as our knowledge goes, jurisdiction of his Iowa estate. Either may determine the fact of his domicile. Neither can control the determination of the other. Baker v. Baker, Eccles & Co. 242 U. S. 394, 37 Sup. Ct. 152, 61 L. ed. 386; Overby v. Gordon, 177 U. S. 214, 20 Sup. Ct. 603, 44 L. ed. 741; Thormann v. Frame, 176 U. S. 350, 20 Sup. Ct. 446, 44 L. ed. 500; Burbank v. Ernst, 232 U. S. 162, 34 Sup. Ct. 299, 58 L. ed. 551; Tilt v. Kelsey, 207 U. S. 43, 28 Sup. Ct. 1, 52 L. ed. 95. Neither can control the administration of the whole estate as a unit. This result comes because there is not a single jurisdiction to which all the property of the estate and all concerned with it are subject.

It is worth while to note that the hearing in the probate court which resulted in the admission of the will to probate was had upon due process. Lipman and all others were parties to it. It resulted in a valid decree reviewable only on appeal. The right of appeal to the district court, with a trial de novo there, is statutory, not constitutional. It need not have been given. Of course if no appeal to the district court were provided by statute there would under the Constitution be a right of review in the supreme court on certiorari for error.

The constitutional question is somewhat discussed in Hammond Packing Co. v. Arkansas, 212 U. S. 322, 29 Sup. Ct. 370, 53 L. ed. 530, 15 Ann. Cas. 645, which involved an order striking out an answer of a de-

fendant refusing to produce evidence as required by a statute and entering judgment against it unheard. There was a statutory basis for the order. This was not controlling. It was distinctly stated that the legislative department was impotent to endow the judicial department with power to disregard the constitutional requirement of due process. In distinguishing Hovey v. Elliott, 167 U. S. 409, 17 Sup. Ct. 841, 42 L. ed. 215, which held that a party could not be punished for contempt by striking out an answer and entering judgment as by default, the court said: "In the former due process of law was denied by the refusal to hear. In this the preservation of due process was secured by the presumption that the refusal to produce evidence material to the administration of due process was but an admission of the want of merit in the asserted defense." In the case before us there is involved no statute creating a presumption or authorizing a dismissal; but, as stated in the case from which we have quoted, a statute cannot make that due process which is not. Lawson v. Black Diamond Coal Mining Co. 44 Wash. 26, 89 Pac. 1120, and Illinois Central R. Co. v. Sanford, 75 Miss. 862, 23 South. 355, 942, resemble the Hammond case.

Allen v. Georgia, 166 U. S. 138, 17 Sup. Ct. 525, 41 L. ed. 949, is cited. The defendant was convicted of crime and sued out a writ of error. Before the day of hearing he escaped from custody. The court ordered the writ dismissed unless within a given time he surrendered or was recaptured. He was later captured and resentenced and the dismissal of the writ was held not a denial of due process. The theory was that his escape, preventing the effective hearing of his appeal, was so much an abandonment of it that the court could prescribe the conditions under which it would be heard and if he did not conform to them dismiss it without denying him due process. The same result is reached on one theory or another in a number of state courts and it is the general doctrine. Gentry v. State, 91 Ga. 669, 17 S. E. 956, and cases cited; Sherman v. Commonwealth, 14 Gratt. 677; Commonwealth v. Andrews, 97 Mass. 543.

It is not clear that the appellant could have dismissed the Iowa action so as to release the witnesses. He was not in sole control of it. It is not shown that he could or that he could not. If he could not he knew when he participated in the proceeding having in view the defeat of juris-

diction in Minnesota that he could not. He knew the risk and made his choice.

In maintaining its jurisdiction and preventing a fraud upon itself and upon litigants the court, under the circumstances disclosed, could conclusively presume that the appeal was without merit, unless the appellant rendered available the testimony the use of which he prevented by the injunction, and dismiss it. The dismissal does not involve the imposition of punishment but the indulgence of a presumption. We hold that the conditional dismissal was not a denial of due process.

We gather from the record that there may be some substance in the claim that Slimmer resided in Iowa. It is however shown that he voted in Minnesota and that he paid his income taxes in Minnesota. It may be assumed that his property in Minnesota paid taxes. The evidence is not here and the question is one of fact which has never been determined in the usual way. The Minnesota court has no disposition to embarrass Iowa in the collection of its taxes to the extent that its legislation and jurisdiction permits. It has no desire to have it determined that Slimmer was domiciled in Minnesota if in fact he was domiciled in Iowa, nor that he was of testamentary capacity if he was not. It is its duty to protect its jurisdiction over the estate of Slimmer in Minnesota. Minnesota has an inheritance tax to collect, some of the beneficiaries are in Minnesota, and there may be Minnesota creditors. Its jurisdiction it will not surrender. It does not interfere with the jurisdiction of Iowa.

The executors, under trying conditions, have been seeking only a fair opportunity to present their evidence. The record does not show the date of the service of the order from which the appeal is taken. It therefore does not appear what time if any Lipman has, assuming his bond to be a supersedeas, in which to remove the obstacles which he has created. Notwithstanding the trouble occasioned the executors, the trial court upon the going down of the remittitur may exercise such discretion as it has in giving him an opportunity to release the witnesses and others from the effect of the Iowa injunction. If such opportunity is given the rights of the executors can be properly safeguarded and so they should be.

Order affirmed.