## NANCY JEAN CHRISTENSON v. OTTO DAVID CHRISTENSON, JR.

162 N. W. (2d) 194.

October 18, 1968—No. 41,463.

*Goff & Goff* and *Sydney W. Goff,* for relator.

*Dworsky, Rosen & Ravich* and *William S. Rosen,* for respondent.

NELSON, JUSTICE.

About April 5, 1967, Nancy Jean Christenson commenced this action for divorce against her husband, Otto David Christenson, Jr., in the District Court of Ramsey County. Each party seeks an absolute divorce from the other and other affirmative relief.

Both parties to this action are 37 years of age. It appears that defendant sought answers under the Rules of Civil Procedure from plaintiff during her pretrial deposition and also certain requested admissions. She refused to give them on the ground of self-incrimination.

The trial court subsequently denied defendant's motion to compel plaintiff to answer said questions and admit or deny the truth of the admissions, and, in the event of her failure to do so, to dismiss her action. Defendant thereupon petitioned this court for a writ of mandamus to compel the district court to vacate the order denying his motion and to grant him the relief sought by said motion. On June 5, 1968, this court issued an order in the nature of an order to show cause why a writ of mandamus should not issue.

Issue having been joined, the pleadings indicate that plaintiff charges defendant with cruel and inhuman treatment and seeks the temporary and permanent custody of their three minor children, alimony, support money, property division, and attorney's fees. Defendant by his answer and counterclaim denies plaintiff's charges of cruel and inhuman treatment and her right to any affirmative relief and at the same time charges

plaintiff with both cruel and inhuman treatment and adultery and seeks custody of the children on the ground that plaintiff is unfit to be granted custody.

On May 1, 1967, defendant's counsel took plaintiff's pretrial deposition under Rule 26, Rules of Civil Procedure. Questions were put to plaintiff by defendant's counsel during her cross-examination relating to plaintiff's alleged misconduct as a wife and mother under the allegations contained in defendant's answer and counterclaim. Plaintiff refused to answer many of the questions on the ground that her answers thereto are privileged under U. S. Const. Amend. V and Minn. Const. art. 1, § 7.

On May 26, 1967, defendant duly served upon plaintiff a request for admissions under Rule 36, Rules of Civil Procedure. The admissions sought thereby related to plaintiff's alleged acts of misconduct. Thereafter plaintiff served upon defendant her answers to said request for admissions, which answers consisted solely of objections to the requested admissions on the ground that the answers thereto are also privileged and self-incriminating, and, as to some of the requested admissions, on other grounds not here material. At the same time plaintiff served a notice of hearing set for June 27, 1967, on the validity of her objections.

Defendant claims that the deposition questions which plaintiff refused to answer and the requested admissions which she objected to as self-incriminating are relevant and material to all of the issues including plaintiff's right to a divorce and any other affirmative relief she seeks, as well as to defendant's right to a divorce and any other affirmative relief he seeks.

The questions and requested admissions which plaintiff refused to answer relate to plaintiff's alleged adultery, the frequency and extensiveness of her absenteeism from her home and children, the deceptions practiced upon defendant, together with her frequent neglect of her family and her general lack of stability and morals, all of which defendant alleges are factors deeply involved in the issues before the court below. Defendant contends that these factors bear directly upon the question of whether or not plaintiff is entitled to a divorce and whether or not she is guilty of cruel and inhuman treatment and of the adultery charged by defendant so as to entitle him to a divorce. He also contends

that these factors bear directly upon the question of plaintiff's fitness for custody of the children, and upon the question of how much, if any, alimony or property division plaintiff should be decreed in view of her misconduct.

Defendant thereafter, pursuant to Rule 37, Rules of Civil Procedure, by notice of motion also returnable on June 27, 1967, moved the district court for an order compelling plaintiff to give answers to all of the deposition questions and to admit or deny the truth of all requested admissions; and striking or dismissing plaintiff's complaint in the event of her refusal to comply with the order.

Following a hearing on defendant's motion, the district court on October 24, 1967, issued an order denying defendant's motion, and, in effect, sustaining the validity of plaintiff's objections to the extent therein pertinent.

Apparently, the basis of the order was (a) that although answers to some of the deposition questions and the admission or denial of the truth of some of the requested admissions "are not of a self-incriminating nature and are not within the purview of plaintiff's privilege under the Fifth Amendment of the Constitution of the United States and Article I, Section 7 of the Minnesota Constitution, the only issues before the Court are those contained in defendant's motion which demands answers to *all* of the deposition questions and *all* of the requests for admissions"; and (b) that at the time the questions were put to her plaintiff had and still has the right to assert her privilege under the Federal and State Constitutions, she cannot be compelled to give answers to all deposition questions and requests for admission, she may assert that constitutional privilege and still maintain her action for divorce, and the court had no power to compel her to choose between answering all of the questions and having her action dismissed.

It appears that the legal issues here involved present questions of first impression before this court. Defendant argues that a party to a contested divorce action who seeks affirmative relief from the court is not entitled to maintain such action and be awarded such relief while, at the same time, such party refuses under cross-examination to give answers to material and relevant questions, during pretrial discovery under Rule 26 or

during the trial, by claiming the privilege against self-incrimination and also refuses to admit or deny the truth of material and relevant admissions, duly requested under Rule 36, by claiming that privilege.

■ In Baskerville v. Baskerville, 246 Minn. 496, 75 N. W. (2d) 762, this court held that the Rules of Civil Procedure are fully applicable to divorce proceedings insofar as such rules are not inconsistent or in conflict with the statutes. We said (246 Minn. 505, 75 N. W. [2d] 768):

"There is no merit in the contention that discovery under the new rules of civil procedure is not available in divorce actions. * * * That the rules are applicable to such statutory provisions insofar as they are not inconsistent or in conflict is expressly declared by Rule 81.03 which provides that, where any statute, heretofore or hereafter enacted, whether or not listed in Appendix A, provides that any act in a civil proceeding shall be done in the manner provided by law, such act shall be done in accordance with these rules. No provisions of c. 518 is inconsistent or in conflict with the discovery provisions of the rules of civil procedure. It follows that discovery is as fully available in a divorce action as in any other action."

See, 36 Minn. L. Rev. 695, 707; Wright, Minnesota Rules, pp. 388, 389.

Rule 26.01, Rules of Civil Procedure, provides in part:

"Any party may take the testimony of any person, including a party, by deposition upon oral examination or written interrogatories for the purpose of discovery or for use as evidence in the action or for both purposes."

Rule 26.02 provides in part:

"Unless otherwise ordered by the court * * *, the witness may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party * * *. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."

Rule 26.03 provides:

"Examination and cross-examination of witnesses may proceed as permitted at the trial under the provisions of Rule 43.02."

Rule 43.02 provides in part:

"A party may interrogate an unwilling or hostile witness by leading questions. A party may call an adverse party * * * and interrogate him by leading questions and contradict and impeach him on material matters in all respects as if he had been called by the adverse party."

Rule 36.01 provides in part:

"After commencement of an action, a party may serve upon any other party a written request for the admission by the latter * * * of the truth of any relevant matters of fact set forth in the request."

Other rules applicable to these proceedings are Rules 36.02, 37.01, 37.02, 37.03, and 41.02. In Jeppesen v. Swanson, 243 Minn. 547, 550, 68 N. W. (2d) 649, 651, the court in an original proceeding for a writ of prohibition reviewed the purpose of the Rules of Civil Procedure, as expressed in Rule 1:

"* * * They shall be construed to secure the just, speedy, and inexpensive determination of every action."

We held that the rules should be given liberal construction so as to effectuate that purpose.

In Boldt v. Sanders, 261 Minn. 160, 164, 111 N. W. (2d) 225, 228, the court again considered the Rules of Civil Procedure, stating:

"* * * It is essential to the achievement of justice that all of the admissible evidence be brought to light in time for both parties to evaluate it and adequately prepare for trial or settlement with full knowledge of the facts.

* * * * *

"We therefore hold that no evidence which will be admissible at the trial is exempt from discovery under Rules 26.02 and 33 unless the affected party invokes a valid privilege. We do not decide, however, whether such party may thereafter waive his privilege at the trial and introduce such testimony, nor do we suggest that pretrial discovery is limited to what is admissible in evidence."

In Snyker v. Snyker, 245 Minn. 405, 407, 72 N. W. (2d) ·357, 358, in which the defendant in an action for divorce sought a writ of prohibition to restrain the trial court from requiring him to permit discovery of, and produce for inspection, his earnings records, this court said:

"Discovery is one of the working tools of the legal profession, and good cause would appear to be shown where it is established that the records in question would be relevant to the issues joined in the proceeding and amount to evidence of probative value."

The decisions which support defendant's contentions involve the assertion of the privilege against self-incrimination during both pretrial discovery and examination of a party during trial and with respect to request for admissions in divorce actions as well as others. In Franklin v. Franklin, 365 Mo. 442, 283 S. W. (2d) 483, the plaintiff wife brought an action for divorce. The essential question presented there was whether, after refusing to answer certain interrogatories propounded to her under the discovery provisions of the Missouri Civil Code or to orally testify as to the status of a prior marriage on the ground that her answers might tend to incriminate her, plaintiff was entitled to maintain an action for·divorce or a motion for temporary alimony. The Missouri Supreme Court held (365 Mo. 445, 283 S. W. [2d] 485):

"Of course, plaintiff had the right to refuse to answer both the written interrogatories and the questions propounded to her at the hearing on the motion if to answer would tend to incriminate her. But, may she, by virtue of that privilege, obtain affirmative relief of divorce or temporary allowances, which otherwise would be denied to her on refusal to answer pertinent written or oral interrogatories? We have not been cited to nor have we found any case authorizing her to do so.

\* \* \* \* \*

"Divorce is a statutory action, but the courts generally follow the rules of equity and apply equitable principles in determining the rights and liabilities of the parties. \* \* \* One seeking a divorce must prove himself to be the innocent and injured party. \* \* \* The latter requirement is neither more nor less than an application of the equitable doctrine of 'clean hands' to a divorce action. That doctrine says that 'whenever a

party, who, as *actor*, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him * * *; the court will refuse * * * to award him any remedy.' * * *

"To illustrate the anomalous situation that would arise if plaintiff's contention were to be sustained, let us suppose that the interrogatories propounded to her, both written and oral, had involved some misconduct on her part and peculiarly within her knowledge, such as, although not criminal, would defeat her right to divorce. In such a case, no one would deny that her refusal to answer would defeat her action. * * * Now, may she by being privileged to refuse to answer certain questions as to her misconduct on the ground that her answer might tend to incriminate her obtain an advantage that less offensive conduct would not afford her? Such a doctrine could enable plaintiff to obtain a divorce without being the innocent and injured party. The answer is obvious. Although plaintiff may refuse to answer self-incriminating interrogatories, yet, when she does, her action must be judged in the same manner and by the same rules as though she had refused to answer any other pertinent written or oral interrogatories.

"The law is that upon oral or written interrogatories being properly propounded to discover relevant and material facts peculiarly and exclusively within the knowledge of the party, his refusal to answer justifies striking his pleadings. * * * This sound and salutary rule applies, insofar as we are advised, without exception to all parties seeking relief in the courts. Especially would its application seem to be called for in divorce actions, where equitable principles govern and the state is an interested party."

In Annest v. Annest, 49 Wash. (2d) 62, 298 P. (2d) 483, an action for divorce was brought by the husband. The trial court awarded a decree to both parties, divided the property, and granted defendant wife custody of the children and child support. The husband appealed from the custody and child-support award, claiming that upon the refusal of his wife on cross-examination to answer questions relating to her adultery upon

the ground that her answers would incriminate her the court erred in refusing to strike her entire testimony. The husband contended that in the absence of his wife's testimony there would have been insufficient evidence to establish that he had also been guilty of adultery and that consequently the custody of the children should be awarded to him. The court on appeal, although agreeing that the wife's testimony should have been stricken, held that custody and support were not to be determined upon the basis of the rights of the parties or used as a penalty or reward for their conduct and that the court's finding that the wife had committed adultery was not necessarily fatal to the award of custody to her. The court in concluding that the wife's testimony should have been stricken stated (49 Wash. [2d] 63, 298 P. [2d] 484):

"Rule of Pleading, Practice and Procedure 42, 34A Wn. (2d) 106, which was in effect at the time of the trial and has since been amended, provided:

" 'A party to an action or proceeding shall not be precluded from examining the adverse party as a witness at the trial. The testimony of a party at the trial may be rebutted by adverse testimony. If a party refuse to attend and testify at the trial, his complaint, answer or reply may be stricken out, and judgment taken against him, and he may also, in the discretion of the court, be proceeded against as in other cases of contempt; provided that this rule shall not be construed so as to compel any person to answer any question where such answer may tend to incriminate himself.'

"A witness who declines to answer a proper question upon the ground that it would tend to incriminate him, has not told the *whole truth,* which his oath as a witness requires. He will not be permitted to testify to part of the truth only. When a *party* claims the privilege of not answering a proper question, the court may dismiss his action or strike his testimony. This action was not brought or maintained by respondent, and the most the court could have done, therefore, was to have stricken the testimony.

\* \* \* \* \*

"We agree that the trial court should have stricken the testimony in question \* \* \*."

Levine v. Bornstein, 13 Misc. (2d) 161, 174 N. Y. S. (2d) 574,

affirmed, 7 App. Div. (2d) 995, 183 N. Y. S. (2d) 868, affirmed, 6 N. Y. (2d) 892, 190 N. Y. S. (2d) 702, 160 N. E. (2d) 921, involved an action brought upon assigned judgments where defendant sought in a pretrial examination to elicit facts from the plaintiff to support an affirmative·defense that the judgments had been purchased in violation of a penal statute. Plaintiff was directed to submit to such examination before trial and did so but refused to answer the pertinent questions on the ground of self-incrimination. The defendant thereupon moved for an order pursuant to the Civil Practice Act and, also in the exercise of the court's inherent power, striking the complaint and dismissing the action for plaintiff's refusal to comply with the court's order. Even though recognizing the plaintiff's right to not incriminate himself, the court nevertheless held that the privilege against self-incrimination should not be expanded to shield a plaintiff who sought affirmative relief in court and at the same time refused to answer otherwise pertinent and proper questions which might have a bearing upon his right to maintain his action, and ordered dismissal of the complaint for plaintiff's refusal to answer.

The court in the Levine case recognized with approval Franklin v. Franklin, *supra,* and Annest v. Annest, *supra.* See the following supporting cases: Berner v. Schlesinger, 11 Misc. (2d) 1024, 178 N. Y. S. (2d) 135, affirmed, 6 App. Div. (2d) 781, 175 N. Y. S. (2d) 579; McKelvey v. Freeport Housing Authority, 29 Misc. (2d) 140, 220 N. Y. S. (2d) 628. In McKelvey, the court discussed the Levine case and quoted therefrom (29 Misc. [2d] 142, 220 N. Y. S. [2d] 630):

"\* \* \* 'the protection of the privilege should [not] be expanded to shield a plaintiff who with one hand seeks affirmative relief in court and with the other refuses to answer otherwise pertinent and proper questions which may have a bearing upon his right to maintain his action. To uphold this inconsistent position would enable the plaintiff to use the privilege as an instrument of attack.' (13 Misc 2d 164.)"

The court went on to say:

"The reasoning of that decision, upheld by our appellate courts, points the way to disposition of the present application. One may not invoke the judicial process seeking affirmative relief and at the same time use

the privileges granted by that process to avoid development of proof having a bearing upon his rights to such relief. In the instant case, however, the party whose answer is sought to be stricken because he invokes his privilege is a defendant who is in court involuntarily, seeking only to defend, and asserting no affirmative defenses or matters as to which he has any burden of proof."

The Levine case is the subject of a note in 28 Fordham L. Rev. 537.[1] The author suggests (28 Fordham L. Rev. 538):

"* * * Should a party refuse to answer simply because he knows that a truthful answer would prejudice his case there is then obviously good cause to dismiss the party's pleading. Is there any less cause when his refusal is predicated on the privilege against self incrimination?

\* \* \* \* \*

"The lower federal courts, in cases where a party-plaintiff declines to answer interrogatories or to respond on an examination before trial because his answers might tend to incriminate him, deny that party the protection of the privilege against self incrimination.[2] These courts maintain that the plaintiff, by instituting his action and seeking the aid of the court to enforce his rights therein, has agreed in advance to disclose all information pertinent to the litigation. The plaintiff, in effect, has waived his privilege. Under the waiver theory a party could thus be compelled to answer. The present court accorded him a right to remain silent. Under either theory the result is the same and, it is submitted, proper. The privilege against self incrimination is a shield and not a sword. A party should not be permitted to use it to gain an advantage over his adversary. Certainly, if a plaintiff seeks affirmative relief or a defendant pleads an affirmative defense he should not have it within his power to silence his own adverse testimony when such testimony is relevant to the cause of action or to the defense."

The Levine case is also discussed in a note in 107 U. of Pa. L. Rev. 426.

---

[1] See, also, Note, 51 Minn. L. Rev. 115, 141.

[2] The cases referred to are Independent Productions Corp. v. Loew's, Inc. (S. D. N. Y.) 22 F. R. D. 266, and Fleming v. Bernardi (N. D. Ohio) 1 F. R. D. 624.

The Florida courts have consistently maintained the rule enunciated in the above cases. In Lund v. Lund (Fla. App.) 161 So. (2d) 873, the wife brought an action for divorce. The husband counterclaimed for divorce on the ground of adultery. The trial court entered a decree granting the husband a divorce and awarding him custody of the two minor children, and the wife custody of an unborn child. The wife appealed. The court of appeals held that it was proper to inform the wife that if she refused to answer a question relating to adultery on the ground of self-incrimination her complaint would be dismissed. Quoting with approval the appellate court's opinion in Stockham v. Stockham (Fla. App.) 159 So. (2d) 481, affirmed (Fla.) 168 So. (2d) 320, 4 A. L. R. (3d) 539, the court said (161 So. [2d] 875):

"In line with the sound reasoning applied in the cases cited, we hold that the plaintiff in this case, who declined to answer a proper question on the ground that her answer might tend to incriminate her, exposed her complaint to dismissal and her testimony to be stricken from the record."

The Florida Supreme Court in affirming the appellate court's decision in the Stockham case approved the Levine case. The court said (168 So. [2d] 321, 4 A. L. R. [3d] 542):

"We find that the Fifth Amendment to the Federal Constitution does not operate as a shield in all situations. For example, in Levine v. Bornstein, 13 Misc. 2d 161, 174 N. Y. S. 2d 574, the defendant therein alleged the plaintiff, an attorney, solicited the action to collect a judgment. Plaintiff attempted to take the Fifth Amendment in response to said allegation and referred to decisions where it was properly interposed, but the court stated:

" '* * * However, an examination of the above and other reported cases on the subject reveals that the privilege was always claimed by a non-party witness or by a defendant in court involuntarily, seeking only to defend. It does not follow that the protection of the privilege should be expanded to shield a plaintiff who with one hand seeks affirmative relief in court and with the other refuses to answer otherwise pertinent and proper questions which may have a bearing upon his right to maintain

his action. To uphold this inconsistent position would enable the plaintiff to use the privilege as an instrument of attack.' "

Other decisions supporting the rule contended for by defendant herein are Rhodes v. Edwards, 178 Neb. 757, 135 N. W. (2d) 453; Laverne v. Incorporated Village of Laurel Hollow, 18 N. Y. (2d) 635, 272 N. Y. S. (2d) 780, 219 N. E. (2d) 294; Nuckols v. Nuckols (Fla. App.) 189 So. (2d) 832. There are Federal decisions that have dealt with the question generally and specifically which hold to the same view with respect to the right of a party to an action to assert the privilege against self-incrimination. Brown v. United States, 356 U. S. 148, 78 S. Ct. 622, 2 L. ed. (2d) 589, holds the rule applicable to criminal cases—that one who takes the stand and testifies in his own behalf thereby foregoes the right to invoke on cross-examination the privilege against self-incrimination regarding matters made relevant by his direct examination—is equally applicable in civil cases. The court held in Brown (356 U. S. 153, 78 S. Ct. 626, 2 L. ed. [2d] 596):

"* * * He who offers himself as a witness is not freed from the duty to testify. The court (except insofar as it is constitutionally limited), not a voluntary witness, defines the testimonial duty. See Judge Learned Hand in United States v. Appel, 211 F. 495.

*   *   *   *   *

"* * * The witness himself, certainly if he is a party, determines the area of disclosure and therefore of inquiry. Such a witness has the choice, after weighing the advantage of the privilege against self-incrimination against the advantage of putting forward his version of the facts and his reliability as a witness, not to testify at all. He cannot reasonably claim that the Fifth Amendment gives him not only this choice but, if he elects to testify, an immunity from cross-examination on the matters he has himself put in dispute. It would make of the Fifth Amendment not only a humane safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell. * * * The interests of the other party and regard for the function of courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege against self-

incrimination. Petitioner, as a party to the suit, was a voluntary witness. She could not take the stand to testify in her own behalf and also claim the right to be free from cross-examination on matters raised by her own testimony on direct examination."

The decision in Brown must be regarded as applicable and controlling in the situation where a party to an action refuses to comply with pretrial discovery requirements on the ground of self-incrimination. It will be noted that the court there indulged in the same arguments as did the state courts in the cases cited herein.

The question in the instant case is not whether plaintiff should be forced to divulge the requested information, since the alternative course of dismissing her action is always open to her. The question is rather whether plaintiff should be permitted to withhold information which might relieve defendant of liability and at the same time be permitted to prosecute her claim. The risk that plaintiff might thereby succeed in an unmeritorious claim would seem to be so substantial that she must either divulge the information or abandon her claim. A court might well justify such a requirement by referring to the traditional notions of waiver, since a person ought not to be permitted to divulge only that part of the story favorable to his or her position and thus present a distorted and misleading picture of what has really happened. If plaintiff is permitted to present sufficient facts to establish a cause of action, defendant should not then be denied the right to uncover all relevant facts through discovery and cross-examination of plaintiff in his attempt to avoid liability.

In Independent Productions Corp. v. Loew's, Inc. (S. D. N. Y.) 22 F. R. D. 266, 276, a private, treble-damage antitrust action, at the pretrial examination of the corporate plaintiffs' president he claimed immunities under the First and Fifth Amendments. The court held:

"It would be uneven justice to permit plaintiffs to invoke the powers of this court for the purpose of seeking redress and, at the same time, to permit plaintiffs to fend off questions, the answers to which may constitute a valid defense or materially aid the defense.

"Plain justice dictates the view that, regardless of plaintiffs' intention,

plaintiffs must be deemed to have waived their assumed privilege by bringing this action. * * *

* * * * *

"* * * Plaintiffs in this civil action have initiated the action and forced defendants into court. If plaintiffs had not brought the action, they would not have been called on to testify. Even now, plaintiffs need not testify if they discontinue the action. They have freedom and reasonable choice of action. They cannot use this asserted privilege as both a sword and a shield."

Research indicates that with the exception of Bishop v. Bishop, 157 Ga. 408, 121 S. E. 305, all of the cases which have dealt with the legal questions presented herein have recognized that a motion to dismiss a complaint, if timely made in the trial court, should be sustained where the plaintiff has refused to answer questions pertinent to the issues involved on the ground of self-incrimination. These decisions appear to have been based upon the rationale that although the privilege against self-incrimination is available to either party to a civil action the party who seeks affirmative judicial relief from the court and at the same time invokes this privilege should not be permitted to prevail and, in effect, "eat his cake and have it too." Annotation, 4 A. L. R. (3d) 545, 546.

Plaintiff is a party to this divorce proceeding and not a mere voluntary witness. It would appear that defendant does not ask the court to hold that a plaintiff in a divorce action waives the right to claim the privilege against self-incrimination by having commenced the action. Plaintiff has maintained her claimed privilege against self-incrimination up to this point and may continue to do so in the future. The choice of whether or not she does is exclusively hers, but is one which she must make as a party to this action. Plaintiff in commencing the action invoked, and submitted herself to, the jurisdiction of the trial court. At the same time she subjected herself to and must comply with our Rules of Civil Procedure, including Rules 26, 36, and 37, which were intended to apply equally to all parties to an action. There is nothing in the rules which entitles a plaintiff in a divorce action to treatment preferential to that accorded the defendant. Rule 1 requires that these rules govern the procedure in all

divorce actions, making no exception in favor of this plaintiff or any plaintiff similarly situated.

The purpose of the rules has been clearly stated. Failure on the part of any party to an action to comply with these rules gives the court the right to impose corresponding or equalizing penalties and sanctions, even to the extent of striking out pleadings or parts thereof or dismissing the action or proceeding. Rules 37.02 and 41.02. The rules provide a full opportunity to search for the truth which is necessary to a just and equitable determination of any litigation.

Divorce actions are governed by equitable principles and the state is an interested party. Franklin v. Franklin, *supra;* Kasal v. Kasal, 227 Minn. 529, 35 N. W. (2d) 745; Ruprecht v. Ruprecht, 255 Minn. 80, 96 N. W. (2d) 14. In Kasal, this court pointed out that while a suit for divorce upon its face is a mere controversy between the parties to the record, yet the public occupies the position of a third party. We went on to say (227 Minn. 532, 35 N. W. [2d] 747):

"* * * That a valid divorce be granted is of fundamental importance, not only to the state but to the parties themselves."

In Ruprecht this court said (255 Minn. 88, 96 N. W. [2d] 22):

"Divorces are purely statutory and follow the course of equity so far as the same is applicable. * * * Under our code system of practice in this state we do not distinguish between forms of action at law or suits in equity. However, the necessity for recognition of equitable rights, and for the granting of equitable relief, continues as before the adoption of the code."

■ If the action herein is to go forward, then the truth must be disclosed before or during the trial. If plaintiff persists in maintaining her privilege, the action may be terminated by striking out her pleadings or by a dismissal of her action as provided for in Rules 37.02(2)(c) and 41.02.

It appears to be clear that plaintiff must choose between complying with Rules 26 and 36 or claiming her privilege with the consequent dismissal of her action by the court. If plaintiff's action should be dismissed,

because of her persistence in refusing to answer the requested questions and admit or deny the truth of the requested admissions on the ground of self-incrimination, and should defendant nevertheless not be granted any relief, the trial court will still retain jurisdiction in this same action "under its general equitable powers, to make provisions for the care and custody of the minor children where the parents are in fact living apart from each other." Atwood v. Atwood, 229 Minn. 333, 337, 39 N. W. (2d) 103, 106.

Long before the Rules of Civil Procedure were ever considered, this court affirmed a lower court's right conditionally to dismiss an action unless a party seeking affirmative relief complied with an order of the court entered to prevent suppression of necessary evidence and consequent injustice to other parties. Lipman v. Bechhoefer, 141 Minn. 131, 135, 169 N. W. 536, 538.

In Wanek v. City of Winona, 78 Minn. 98, 80 N. W. 851, 46 L. R. A. 488, an action was brought to recover damages for personal injuries caused by the alleged negligence of the city. The only question considered on appeal was whether the trial court erred in denying the application of the city to require plaintiff to submit himself to a physical examination. The trial court had denied the application on the grounds that it had no power to order a party to submit to a physical examination of his person and that, even if it had the power, it would, in the exercise of its discretion, have refused to grant defendant's application. Mr. Justice Mitchell disposed of that issue by holding (78 Minn. 100, 80 N. W. 851):

"We are very clearly of the opinion that the court has the power, in a case of this kind, to order the plaintiff to submit to a physical examination of his person. * * * Upon both principle and reason we are of opinion that in a civil action for physical injuries, where the plaintiff tenders an issue as to his physical condition, and appeals to the courts of justice for redress, it is within the power of the trial court, in the exercise of a sound discretion, in proper cases, upon an application reasonably made, under proper safeguards designed to preserve the rights of both parties, to order such an inspection, and to require the plaintiff to submit to it under the penalty of having his action dismissed in case he refuses to do so.

"* * * When a person appeals to the state for justice, tendering an issue as to his own physical condition, he impliedly consents in advance to the doing justice as to the other party, and to make any disclosure which is necessary to be made in order that justice may be done. *No one claims that he can be compelled to submit to such an examination. But he must either submit to it, or have his action dismissed.*" (Italics supplied.)

See, also, Lipman v. Bechhoefer, *supra.*

The situation presented by the case at bar is clearly analogous to the Wanek case, and its rationale applies here. While plaintiff cannot be compelled to waive her privilege against self-incrimination, in this divorce action, as in any other civil action, she must either waive it or have her action dismissed.

Let a peremptory writ of mandamus issue.