## CIRCUIT COURT OF HENRICO COUNTY

James McIntyre

    v.

Susan McIntyre

February 10, 1975

Case No. N-819

### By JUDGE E. BALLARD BAKER

On September 5, 1974, James McIntyre filed his Bill for a divorce from Susan on grounds of adultery. On September 26, Susan answered, denying the allegations, and filing a cross-bill for divorce on cruelty and desertion.

James took depositions in support of his Bill on October 8, 1974, the defendant not appearing. On November 11, Susan took depositions. Two of her witnesses stated that James, prior to the separation, told them of having improper relations with other women. (Depos. pp. 20, 22, 23, 25, 53.) Questioning along this line was objected to as beyond the allegations in the Bill of Complaint. (Depos. p. 19.) On December 18, James was deposed and refused to answer questions relating to relations with other women on the ground that the answers might tend to incriminate. (Depos. pp. 8, 13, 16.) Following a conference with the Court, and my letter of December 30, 1974, James was deposed on January 15. He refused to answer

questions similar to those put to him on December 18, on advice of counsel.

No depositions of Susan have ever been taken. She now asks the Court to dismiss James's action because of his refusal to answer the questions on December 12 and January 15.

Generally speaking, Virginia allows recrimination as a defense. Kirn v. Kirn, 138 Va. 132. As stated in Kirn, at page 134:

> Recrimination in divorce law is the defense that the applicant has himself done what is ground for divorce either from bed and board or from the bond of matrimony. It bars the suit founded on whatever cause, whether the defendant is guilty or not.

While § 20-117 has modified that broad statement and Haskins v. Haskins, 188 Va. 525, at 535, has overruled the precise holding in Kirn, I think it clear that adultery on the part of the complainant can be shown as a recriminatory defense to a divorce sought on adultery. Mohr v. Mohr, 193 S.E. 121 (W.Va. 1937).

In this case, Susan relies on adultery on the part of James as recrimination. Her witnesses have quoted James as admitting improper relations with other women, but this alone does not seem sufficient. In 9 Ruling Case Law, at § 180, the rule is stated that a recriminatory defense, ". . . must be proven by the same quantum of evidence as would be required if it were charged as a ground for divorce." Where corroboration is required to establish grounds for divorce, corroborating evidence is necessary to establish recrimination.

Susan suggests that if James answered the questions the charges would be corroborated. Perhaps so, but I do not believe the law permits the Court to infer guilt from silence. Also, § 184, in the above reference points out that recrimination is an affirma-

tive defense which should be specially pled or set up as a defense. This was not done here.

Consequently, I do not believe Susan can defend on the ground of recrimination.

Susan also contends that James has not come into Court with clean hands and further relies on his taking the Fifth Amendment to support her motion.

The "clean hands" defense need not be specially pleaded. 27 Am. Jur. 2d, Equity, § 136. There is even authority that a court of equity, on its own motion, may invoke the doctrine. 7 M.J., Equity, § 17, footnote 10. Section 137 in the Am. Jur. reference discusses the basis of the rule, pointing out that the underlying theory is ". . . that equity has for its purpose the dispensing of unalloyed justice and that 'no polluted hand shall touch the pure fountain of justice.' " In § 142 can be found statements that the maxim's application depends upon a connection between the acts of the complainant and the conduct of the defendant which the complainant relies on for his cause of action; the acts must be shown to have a connection with the transaction giving rise to the suit or otherwise related to the defendant or anything in which he is interested.

In 9 R.C.L. Divorce, § 162, the text notes that defenses in divorce are general and special

> . . . the former class consisting of those defenses which belong to parties as litigants and which are not distinguishable in principle from defenses generally, while special defenses are those which, to a great extent, have been developed through an enlightened public policy in the effort of the state to conserve its highest interests and to minimize the dangers and abuses that invariably spring up under a lax or even an indifferent administration of the laws. Since the state enters every divorce proceeding as a quasi party at least, it is obvious

that it will not lend its aid to the procuring of collusive divorces, nor grant relief in actions where the plaintiff, himself or herself, is guilty of committing a marital wrong. . . .

The above statements indicate to me that the questions put to James on which he took the Fifth Amendment were relevant, even though the defense of recrimination may not have been properly raised. In an equitable action, particularly a divorce case in which the state has an interest, I think the questions put to James were material and relevant.

What is the effect of his refusal to answer? Further consideration of this point leads me to somewhat change the view expressed in my letters of December 30. I am now of the view that a plaintiff in a civil case cannot be "compelled" to answer any question which might incriminate him, but upon his failure to respond his case should be dismissed. Stockham v. Stockham, 168 So. 2d 320 (Fla. 1964), expresses the principle that the Fifth Amendment is not a shield in all situations, stating that

. . . in civil litigation where it is manifest the exercise of the privilege would operate to further the action or claim of the party resorting to the privilege against his adversary contrary to equity and good conscience, the party asserting privilege will not be permitted to proceed with his claim or action.

While Florida does have an immunity provision to which the Court makes reference, the one year limitation on a misdemeanor charge in Virginia protects James with respect to many questions put to him on December 15.

A similar rule is stated in Franklin v. Franklin, 283 S.W.2d 483 (Mo. 1955), Cristenson v. Cristenson, 162 N.W.2d 194 (Minn. 1968), and Minor v. Minor, 232 So. 2d 746 (Fla. App. 1970), in divorce cases. Simkins

v. <u>Simkins</u>, 219 So.2d 724 (Fla. App. 1968), disapproved <u>Stockham</u>, but was itself disapproved in <u>Minor</u>. <u>Simkins</u> and <u>Minor</u> are opinions of inferior appellate courts in Florida. <u>Stockham</u> is a decision of the Florida Supreme Court. <u>Simkins</u> bases its disapproval on <u>Spevack</u> v. <u>Klein</u>, 87 S. Ct. 625, and <u>Garrity</u> v. <u>N. J.</u>, 87 S. Ct. 616, but <u>Minor</u> points out that <u>Spevack</u> and <u>Garrity</u> involved persons summonsed to testify in a proceeding, not persons who voluntarily seek relief in a civil proceeding.

For cases applying the rule in other than divorce cases, see 4 A.L.R.3d 545.

<u>Bramble</u> v. <u>Kleindienst</u>, 357 F.Supp. 1028, approves the rule in <u>Stockham</u>, as follows:

> . . . A plaintiff in a civil action who exercises his privilege against self-incrimination to refuse to answer questions pertinent to the issue involved will have his complaint dismissed upon timely motion.

As my letter of December 30, 1974, is not entirely in accord with my present view, I think Mr. McIntyre should have an opportunity to consider his position in light of what my present view is. Mr. McIntyre is given ten days after the date of this letter in which to state whether he is willing to answer the questions.